**STATE of Missouri, Respondent,**

v.

**Nathan D. WILLIAMS, Appellant.**

**Nathan D. WILLIAMS, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 59874.

Missouri Court of Appeals, Eastern District, Division Four.

July 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 8, 1993.

Application to Transfer Denied Oct. 26, 1993.

Dorothy M. Hirzy, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Appellant, Nathan D. "Danny" Williams, appeals his jury convictions for rape, § 566.-030.3 R.S.Mo.1986, (all further statutory references shall be to R.S.Mo.1986 unless otherwise noted) and sodomy, § 566.060, for which he was sentenced as a persistent sexual offender to two consecutive life terms, with a minimum of thirty years to be served on each sentence before he is eligible for parole. § 558.018. He also appeals the denial of his post-conviction relief (Rule 29.15) motion after an evidentiary hearing.

On appeal, appellant essentially claims the trial court erred in: (1) denying his *Batson* challenge to four of the state's peremptory jury strikes; and (2) overruling his motion to suppress an inculpatory statement because it was made after appellant had asserted his right to remain silent and without any additional *Miranda* warnings. Also he claims the motion court erred in denying his Rule 29.15 motion based on ineffective assistance of counsel in that (1) the motion court did not rule on his claim that trial counsel was ineffective for not objecting to certain testimony pertaining to an exhibit, a blood stained car seat, not admitted in evidence, and for not preparing a withdrawal instruction as suggested by the trial court; (2) the motion court did not rule on his claim that trial counsel was ineffective for failure to file a motion for new trial based on newly discovered evidence; (3) trial counsel was ineffective for rebuffing appellant's mother when she approached counsel with information regarding possible juror misconduct; (4) trial counsel was ineffective for failing to conduct independent DNA testing of appellant which could have exonerated him; (5) the motion court did not squarely address all of his claims of ineffective assistance of counsel because the findings and conclusions were too abbreviated for meaningful appellate review; and (6) the cumulative effect of trial counsel's acts and omissions denied appellant effective assistance of counsel and his right to a fair trial. We affirm.

Appellant does not contest the sufficiency of the evidence so we shall briefly state the evidence in a light most favorable to the verdicts. On October 6, 1989, the victim, B.L., a ten year old girl, was at home with her mother and her sisters. At some point, appellant, a friend of the family, arrived at the house. Around 4:30 p.m., B.L. accompanied appellant on a drive to deliver a wallet to B.L.'s uncle at a grocery store where the uncle worked. Appellant and B.L. returned to B.L.'s house and appellant gave B.L.'s mother, S.L., some stuff that they had bought at the supermarket. Appellant whispered something in S.L.'s ear and around 6:00 p.m. appellant and B.L. departed together again, ostensibly to go to a different supermarket. Instead, appellant drove to a nearby park. They got out of the car and went to an area in the middle of the park. There, appellant told B.L. to take off her clothes, and proceeded to have sex with her and anally sodomize her. Appellant then dropped her off near her home, instructing her not to tell anyone or he would kill her. Around 8:00 p.m., B.L. went home, went straight to her room and changed clothes. S.L. looked in on B.L., noticed that she had changed clothes, and went and looked for the clothes B.L. had taken off. S.L. found the clothes which were full of blood. S.L. called the police, who came to her home, and B.L. was taken to the hospital. Upon examination at the hospital, B.L. was diagnosed to have multiple abrasions on her back side and abdomen. She also had serious injuries to her vagina, anus and rectum requiring surgical repair. The doctors who testified at trial opined that these injuries were the result of sexual assault and rape. Also an analysis of victim's urine revealed a trace of intact sperm with moderate degenerative forms.

During trial, appellant's motion for judgment of acquittal at the close of the state's case relating to one count of oral sodomy was

sustained. After lengthy deliberations during which the trial court submitted the "hammer" instruction, MAI–CR 3d 312.10, the jury returned verdicts of guilty on the rape and sodomy counts.

■ Appellant's first point is that the trial court erred in overruling his objection, based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the state's use of peremptory strikes to remove black venirepersons from the jury solely because of their race. On appeal, relying on *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), appellant, who is white, contends that he has a right to object to the prosecutor's use of peremptory challenges to exclude black venirepersons from the jury. In *Powers,* the Supreme Court held that a criminal defendant has standing to assert the equal protection rights of venirepersons excluded for racial reasons from his jury.

While we agree with the ruling of *Powers,* we need not review the merits of appellant's point as the record shows that his objection in the trial court was not timely. "While *Batson* recognized the right of criminal defendants to challenge racially motivated strikes by the prosecutor, the Court explicitly predicated the right upon the defendant's timely objection. Subsequent to *Batson,* 'both the federal and state courts have consistently held that the failure to make a timely objection effectively waives any arguments based on improprieties in jury selection which the defendant might urge pursuant to *Batson.'* " *State v. Parker,* 836 S.W.2d 930, 935[9] (Mo. banc 1992). (Citations omitted.) In *Parker,* our Supreme Court found that a *Batson* challenge raised before the unselected members of the venire are excused and the jury sworn is timely. *Id.,* at 935[10]. The Court reasoned that requiring defendants to make *Batson* challenges prior to the venire's dismissal allows the trial court to determine whether a constitutional violation has occurred while there remains time to correct the error by disallowing the offending strike, and also maximizes judicial time and resources because there is no need to quash the jury and call a new venire. *Id.,* at 936[10]. "In sum, this Court agrees that '[i]t is the release of the unselected members of

the venire and the problems and difficulties created thereby which truly govern the timeliness of a *Batson* motion.' " *Id.,* at 937[10] (quoting *McGruder v. State,* 560 So.2d 1137, 1143 (Ala.Cr.App.1989)).

Here, the record shows that voir dire examination was concluded in the late afternoon of August 30, 1990. The trial court announced that the sheriff had seated twelve jurors and three alternates. Both the prosecutor and defense counsel acknowledged that the seated panel conformed to their strikes. The trial court released the panel, instructed them to return in the morning, and told them that they would be sworn and receive instructions at that time. The next morning in chambers, defense counsel raised an objection to the state's strikes. Thus, the record indicates that it was not until after the unselected venirepersons had been discharged, and just prior to the jury being sworn, that appellant's objection was made. As such, appellant's claim of error based on the trial court's overruling his objection to the state's strikes was not preserved.

■ Appellant's second point is that the trial court erred in overruling his motion to suppress, and admitting into evidence at trial over his objection, a statement he made to a police officer: "Tell my family I'm sorry. I'm ashamed of what I did, but I don't remember what happened." Appellant contends that this statement should not have been admitted because he had invoked his right to remain silent, and the statement was a result of reinitiation of questioning without again advising him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Ordinarily, a ruling on a pre-trial motion to suppress may not be asserted as a ground of error on appeal because the pre-trial motion to suppress and the admission at trial of the challenged evidence are not two distinct procedures. *State v. Vinzant,* 716 S.W.2d 367, 372 (Mo.App.1986). The real damage is not done until the evidence is introduced in the trial of the case. *Id.* Here, appellant based his objection at trial to the admission of his statement on his prior motion to suppress statements. Therefore,

we shall refer to the pre-trial ruling to determine the propriety of the trial court's admission of the statement in evidence. In reviewing the trial court's order, we look only to determine whether the evidence was sufficient to support it. *State v. Thompson*, 820 S.W.2d 591, 594[6, 7] (Mo.App.1991). We consider all facts and reasonable inferences favorable to the challenged order and disregard contrary evidence and inferences, if the evidence is otherwise sufficient to support the trial court's order. *State v. Brown*, 814 S.W.2d 304, 307[1–3] (Mo.App.1991). We also defer to the trial court's superior opportunity to determine the credibility of witnesses and the weight of the evidence. *Id.*

The record shows that appellant was arrested around 4:30 a.m. on October 10, 1989. Around 5:30 a.m. he was taken to police headquarters and held in a detention cell in the sex crimes/child abuse office. At some point he was taken out of the cell to an interview room. He was advised of his rights under *Miranda* which he indicated he understood, he was told the partial facts pertaining to the incident in question, and he was asked if he would like to say anything about it. Appellant was reluctant to talk, and would not talk about the incident in question, but did talk about suicide and the Bible. Eventually, Detective Sasenger said to appellant, "I guess you're not going to say nothing," and appellant just rubbed his hands. Detective Sasenger then took appellant back to the detention cell and, before closing the cell door asked appellant, "Danny, are you sure you don't want to talk about anything about this incident before I leave and close the cell?" Appellant then made the statement. About fifteen minutes had elapsed between the time he initially received *Miranda* warnings and the time he made the statement.

Appellant contends that this statement should have been suppressed because it was obtained after he had invoked his right to remain silent. He analogizes this situation to cases holding that an accused who expresses his desire to deal with the police only through counsel is not subject to further interrogation until counsel is made available to him, unless the accused himself initiates

further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–5, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *State v. Bittick*, 806 S.W.2d 652 (Mo. banc 1991). Appellant contends that since he invoked his right to remain silent, the issue presented thus becomes whether he initiated the conversation which resulted in the statement in question.

In *State v. Martin*, 820 S.W.2d 605 (Mo. App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3002, 120 L.Ed.2d 878 (1992), the defendant on a robbery charge, after being advised of his *Miranda* rights, refused to make a statement. In the defendant's presence, one police officer told another that the victim had identified the defendant from a photo lineup as being involved in the robbery. One police officer told the defendant that he had "no further questions, nothing else I needed from him." *Id.*, at 606. The officer told the defendant that he would go back to his cell unless "you have a statement or something you want to tell me." *Id.* Defendant then made an inculpatory statement. In denying appellant's assertion that the trial court erred in admitting his statement in evidence because it was taken in violation of his right against compelled self-incrimination in that the police officers refused to respect his refusal to make a statement and persisted to question him about changing his mind after he had refused to make a statement, we stated:

> The exercise of the right to remain silent is not a "per se proscription of indefinite duration," rather "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" After an accused has invoked his right to remain silent, he is not precluded from changing his mind and making a statement. Nor are the police prohibited from inquiring whether an accused has changed his mind.

*Id.*, at 607[5]. (Citations omitted.) We held that the police officer's statement that the defendant would be taken back to his cell

unless there was something else he wanted to say merely gave defendant an opening to say something if he had changed his mind. We found that defendant was not threatened or coerced, and that the statement was not produced by renewed or lengthy questioning, badgering, or persistent efforts to wear him down. *Id.*, at 607[6].

Here, it is not clear that appellant asserted his right to silence, as he was willing to talk about subjects unrelated to the crime, such as suicide and the Bible. When it became apparent to Detective Sasenger that appellant would not speak about the incident in question, he was taken to the detention cell. Before finally ending the interview, Detective Sasenger asked appellant essentially if he had changed his mind and wanted to make a statement. This was permissible. *Id.* Appellant's statement was not procured through renewed or lengthy questioning, badgering, or persistent efforts to wear him down. There was substantial evidence to support the trial court's ruling to admit the statement, and we find no abuse of discretion. Point denied.

■ Appellant's remaining points on appeal claim that the motion court erred in denying his Rule 29.15 motion based on ineffective assistance of counsel. Review of the denial of appellant's Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Taylor v. State,* 782 S.W.2d 741, 743 (Mo.App.1989). The motion court's findings and conclusions will be deemed clearly erroneous only if, after a review of the entire record, this court is left with a definite and firm impression that a mistake has been made. *Id.*

■ To prevail on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Flenoid,* 838 S.W.2d 462, 470[18–21] (Mo. App.1992). To show prejudice, a movant must show that there was a reasonable probability that, but for the errors of the attorney, the jury would have reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Id.*

Here, the motion court made specific findings and conclusions on some of the claims presented in appellant's motion, and concluded that appellant failed to meet his burden of proof on any claim of counsel's ineffectiveness. The motion court overruled and denied appellant's motion in all respects, and ordered it dismissed with prejudice.

■ Appellant first contends that the motion court erred in not ruling on his claim that trial counsel was ineffective for failing to object to the testimony of state's witness Joseph Crow, a criminalist with the St. Louis Police Department, for failure to object to certain evidence, and for failure to prepare a written instruction withdrawing this evidence in that the evidence was not relevant or material to the state's case and was extremely prejudicial to appellant.

While appellant's point asserts error on the part of the motion court for not ruling on his claim of ineffective assistance, his argument is directed to whether the motion court was correct in its ruling denying his claim. We will therefore review appellant's point as it relates to the correctness of the motion court's ruling.

At trial, witness Crow testified to the presence of human blood on clothes identified as those of the victim. He also testified to the presence of blood on a car seat which had been removed from the car allegedly used by appellant to transport the victim to and from the scene of the crime, but was unable to determine if that blood was of human origin. The car seat was eventually excluded from evidence because there was no testimony identifying the car from which the seat was taken as the car driven by appellant. The trial court therefore asked defense counsel

what relief would be requested as to the car seat. Defense counsel asked the court to caution the jury about information as to the car seat, and the court instructed counsel to prepare a written withdrawal instruction to that effect. The record does not reflect that any such instruction was submitted to the trial court or given to the jury.

During closing argument, however, defense counsel argued the dearth of physical evidence connecting appellant to the crime, including the adverse inference that something was missing when witness Crow could not testify as to how long the blood stain on the car seat had been there or whether it was of human origin. Thus, it is apparent from the record that instead of seeking to withdraw the car seat and the testimony relating to it from any consideration by the jury, trial counsel chose to use that rejected evidence as a tool for arguing weaknesses in the state's case. As such, this decision was a choice of trial strategy which does not provide the basis for a finding of ineffective assistance of counsel. *Miller v. State*, 748 S.W.2d 745, 747[1–4] (Mo.App.1988). Point denied.

■ In his next point, appellant claims the motion court erred in not ruling on his claim that counsel was ineffective for not filing a motion for new trial based on newly discovered evidence of juror misconduct and instead filing a supplemental motion for new trial which the trial court lacked jurisdiction to hear. He claims he was prejudiced in that counsel's failure to file the appropriate pleading denied the trial court jurisdiction to rule on the allegations of juror misconduct and denied him effective assistance of counsel.

Again, appellant's point asserts error on the part of the motion court for not ruling on his claim of ineffective assistance, but his argument is directed to whether the motion court was correct in its ruling denying his claim. We will therefore review appellant's point as it relates to the correctness of the motion court's ruling.

On February 8, 1991 the trial court held a hearing on appellant's motion for new trial. During this hearing the trial court stated that since the motion filed on October 2, 1990 had not been ruled upon, it would be consid-ered as denied by operation of law. However, the trial court stated that it would allow appellant to present testimony as to the alleged juror misconduct, even though there was no pleading to which the testimony was directed, with the understanding that a motion for new trial based on newly discovered evidence would be subsequently filed. The testimony of alternate juror Kathryn Schaeffer was then received. Ms. Schaeffer testified that she was an alternate juror in the trial of appellant and had been released, but returned to the court after lunch. Sometime after the case was submitted to the jury, a juror whom she described but could not name approached her and spoke to her concerning the trial of appellant. Upon cross-examination and examination by the court, Ms. Schaeffer testified that at the end of the first day of the jury's deliberations, she and another alternate were standing by a telephone outside the courtroom when the juror approached her. The juror asked Ms. Schaeffer what she thought, to which Ms. Schaeffer said she had reasonable doubt. The juror stated that she thought appellant was guilty. They did not discuss any facts or reasons. Ms. Schaeffer testified further that she believed the juror and the other alternate exchanged words, but at that point she was turning around and walking away. She did not hear what was said, but stated that it "was really a short conversation."

At the sentencing hearing on February 28, 1991 the trial court noted that a Supplemental Motion for New Trial had been filed, and that it was ready to rule on that. In response to objection by the prosecutor to the supplemental motion as being improper procedure, the trial court stated, "... I don't think that I have any authority to rule on an additional Motion for New Trial and I'd overrule them (sic) anyway if I did. I don't think the motion for supplemental motion (sic) was properly presented and should be favorably received by me. The testimony of the witnesses, of course, do not (sic) cause me to take any change in my position and I'm going to overrule on this date the Supplemental Motion for New Trial."

We note that appellant's point on appeal does not go to whether the trial court erred

in not granting a new trial based on newly discovered evidence of juror misconduct, but rather whether counsel was ineffective for not filing the correct motion. The record demonstrates that even though the motion was not titled as a motion for new trial based on newly discovered evidence, and did not contain the allegations required for such a motion, *see, State v. Davis,* 698 S.W.2d 600, 602[2] (Mo.App.1985), the trial court considered it as a motion for new trial based on newly discovered evidence. While doubting its authority to consider appellant's motion, the trial court, based on the testimony of Ms. Schaeffer, overruled the motion. Thus, the record shows that appellant was not prejudiced by trial counsel's failure to file a technically proper motion for new trial based on newly discovered evidence. Point denied.

■ Appellant's next point is essentially that the motion court erred in overruling his claim that trial counsel was ineffective for rebuffing appellant's mother, Mary Williams, when Mrs. Williams attempted to inform trial counsel that the victim was discussing appellant's prior rape conviction in the hearing of sitting jurors, and for taking no action when Mrs. Williams informed trial counsel of contact between two alternates and a deliberating juror.

At the hearing on appellant's Rule 29.15 motion, Mrs. Williams testified that she heard the victim discussing within the hearing of sitting jurors the fact that appellant had previously been convicted of rape. Mrs. Williams testified that she went to trial counsel with the information, but that trial counsel said, "I don't want to hear it. Everything is going fine. I don't want to hear it." Mrs. Williams also testified to having seen two alternate jurors talking with a sitting juror after the case had been submitted and that she told trial counsel about this incident. She testified that counsel sent an investigator out into the hallway, who came back and said, "Oh they're just talking," and, "They're standing by the elevator talking." Raymond Williams, appellant's father, testified that he heard the prosecutor discussing appellant's prior conviction with the dismissed alternates after the case had been submitted to the jury. Mrs. Williams did not hear what was

said during the conversation between the juror and the alternates, and stated that as far as she knew this was not brought to the attention of the trial court.

Trial counsel testified at the hearing that at no time did Mrs. Williams inform her of the victim's conversation pertaining to appellant's prior conviction, that she did not recall Mrs. Williams ever trying to talk to her or mention anything about it at all, and that the first time she had heard of this allegation was when she read appellant's Rule 29.15 motion. Trial counsel also denied that Mrs. Williams ever told her that she saw two alternates talking to one of the deliberating jurors.

In its findings of fact, the motion court stated:

> Movant's mother, Mary Williams and father, Raymond Williams, each testified that possible improper contact occurred with jurors during the trial and deliberation. Each testified that this information was brought to [trial counsel]'s attention but no action was taken. [Trial counsel] denied that she was ever informed of any information concerning this.

> \* \* \* \* \* \*

> On reviewing this evidence this court finds the Movant's evidence unsupported and not credible and finds the testimony of [trial counsel] credible.

In its conclusions of law with respect to this issue, the motion court stated:

> I find the evidence presented is of doubtful credibility, but even assessing the evidence to be true, the movant has not met his burden concerning prejudice. ... [T]he improper contact with jurors is speculative at best as to whether the jurors were aware of anything and of its impact upon them. ... Therefore, the movant has not shown prejudice as this evidence does not demonstrate that the results of the trial would have been different.

■ The crux of the motion court's order denying this particular claim of ineffective assistance is that the motion court did not believe the testimony of appellant's witnesses, but rather believed trial counsel when

their testimony diverged as to what trial counsel was told about possible juror misconduct. Appellant's position on appeal is that his witnesses were credible and trial counsel was not. The motion court, however, is not required to believe the testimony of a movant or any other witness at an evidentiary hearing, even if uncontradicted, and an appellate court must defer to the motion court's determination of credibility. *Childress v. State*, 778 S.W.2d 3, 5[1, 2] (Mo.App.1989). Therefore, the motion court was not clearly erroneous in denying this claim of ineffective assistance of counsel. Point denied.

■ Appellant's next point is that the motion court erred in overruling his Rule 29.15 claim that counsel was ineffective essentially for failing to conduct an independent DNA test of appellant which could have exonerated appellant of the rape and sodomy and produced a different result at trial.

The motion court's finding on this particular claim stated trial counsel testified that as a matter of trial strategy she chose not to pursue DNA testing as appellant's medical records would have revealed injuries to movant which were consistent with the attack. The medical records resulted from an examination of appellant at St. John's Mercy Hospital following his arrest on a driving while intoxicated charge in Maryland Heights, Mo. on the evening of the attack. While counsel did testify to having subpoenaed medical records, and determining that information contained in those records could have been perceived as damaging to appellant's case, the record reflects that this was not the basis for trial counsel's decision not to pursue DNA testing.

At trial there was evidence that rectal and vaginal smears were taken from the victim, but there was no evidence indicating what, if anything, those smears revealed. Also at trial there was evidence to the effect that the victim's urine revealed a trace of intact sperm with mild degenerative forms. At the hearing on his Rule 29.15 motion, appellant testified that trial counsel brought up the subject of DNA testing, and that after appellant had conferred with someone else, he told counsel that he wanted to get DNA testing. Trial counsel testified that after discussing it with appellant, they decided not to pursue DNA testing as a matter of trial strategy. Trial counsel also testified that from the information she had obtained, more than one sperm head may be needed in order to even do DNA testing, but that in the midst of all that, they decided not to pursue that strategy.

The claim in appellant's motion does not state what DNA testing would have shown, or that it would have shown that appellant did not commit the charged acts. Rather, the allegation presented to the motion court was that DNA testing "could have established" that appellant did not commit the crimes. Appellant presented no evidence to show that had DNA testing been performed he would have been exonerated of responsibility for the crimes with which he was charged. The fact that an alleged error by trial counsel might have had some conceivable effect on the outcome is not sufficient. Rather, the movant, when challenging a conviction, must show there is a reasonable probability that, absent the alleged error, the fact finder would have reasonable doubt respecting guilt. *Kayser v. State*, 784 S.W.2d 820, 821–22[1, 2] (Mo.App.1990). Appellant's position on appeal that, "Although a blood-test might not have been helpful in this case, DNA testing, however, could have produced scientific evidence in appellant's favor which could have resulted in an acquittal of appellant" similarly does not allege nor demonstrate prejudice. Indeed, DNA testing might have produced scientific evidence which could have helped ensure appellant's conviction.

Thus, apart from trial counsel's testimony that the decision not to do DNA testing was a matter of trial strategy, appellant has not demonstrated a reasonable probability that, but for the alleged errors of trial counsel, the jury would have had reasonable doubt respecting his guilt. Point denied.

■ Appellant's next point is that the motion court erred in overruling his Rule 29.15 motion because the court did not squarely address all claims raised in that the court's findings of fact and conclusions of law were too abbreviated for meaningful appel-

late review. He asks us to remand the case to the motion court for further findings and conclusions. To support his contention, he points to several claims of ineffectiveness of trial counsel contained in his motion which were not addressed by the motion court's findings of fact and conclusions of law, including counsel's failure to (1) move to strike the testimony of Detective Sasenger; (2) inform the jury that the police showed only one photograph to the victim in an out-of-court identification of appellant; (3) object to the in-court identification of appellant by the victim; (4) have the trial court rule upon his motion for new trial within ninety days of the jury's verdict; (5) object to the testimony of criminalist Joseph Crow regarding Exhibit 8A, a blood stained car seat; (6) object to testimony regarding two empty liquor bottles; (7) move for a mistrial or prepare a written withdrawal instruction as requested by the trial court as to Exhibit 8A, a blood stained car seat; (8) prepare a motion for new trial based on newly discovered evidence of juror misconduct as directed by the trial court; and (9) request a sequestered jury.

In its conclusions of law the motion court stated:

> The movant has failed to meet his burden of proof on *any claim* of ineffectiveness of counsel. On the testimony adduced and trial transcript admitted this Court finds no such showing of ineffectiveness of [trial counsel].

(Emphasis added.) In its order denying relief on the Rule 29.15 motion, the motion court stated:

> The Court, having considered all the Motions, all of the evidence adduced at the hearing, and taken judicial notice of the trial cause file, concludes as a matter of law that under the law of this State and the evidence that Movant has not carried his burden of proof and under the law is not entitled to any post-conviction relief.
>
> The Court now overrules and denies the Motion for post-conviction relief *in all respects* and orders it to be dismissed with prejudice.

(Emphasis added.)

■ In order for the appellate courts to engage in review of post-conviction proceedings, the motion court is required to make findings of fact and conclusions of law on all issues presented. Rule 29.15(i). There is no precise formula that the findings and conclusions must follow and they are sufficient as long as they permit review of the judgment. *State v. Hamilton,* 817 S.W.2d 8, 11[12–14] (Mo.App.1991). The findings and conclusions do not need to be itemized, they need only be responsive to the issues raised. *Id.* There is no need to remand for findings and conclusions if the record allows this court to determine the correctness of the motion court's action. *Martin v. State,* 789 S.W.2d 863, 864[1] (Mo.App. 1990). A motion court need not make specific findings of fact and conclusions of law on issues on which no substantial evidence was presented at the motion hearing. *Burton v. State,* 817 S.W.2d 928, 930[7] (Mo.App.1991).

Here, the motion court found that appellant had not met his burden on any of his claims, and in its order denied each of appellant's claims. Claims five, seven and eight, as numbered above, have been previously reviewed in our discussion of appellant's points three and four on appeal, and have been shown to be without merit. On claims one, two, three, four and six, as numbered above, appellant did not present substantial evidence to support these allegations. The motion court, therefore, was not required to make specific findings or conclusions as to these issues. *Id.* On claim nine, as numbered above, appellant elicited testimony from trial counsel to the effect that a sequestered jury was not requested at trial. However, counsel also testified that this case was not a high publicity case, and that it was not necessary or a good idea to ask for a sequestered jury. As such, this decision was a choice of trial strategy. The motion court's generalized conclusion that appellant did not meet his burden on any claim of ineffectiveness of counsel is sufficient to permit review. *See, Burton,* at 930[7]. We do not find that conclusion to be clearly erroneous. Point denied.

■ Appellant's final point is that the motion court erred in denying his Rule 29.15 motion as the cumulative effect of twelve of

trial counsel's acts and omissions show that counsel's performance was deficient and that appellant was prejudiced because counsel's deficient performance deprived him of his right to a fair trial.

■ Eleven of appellant's twelve claims of ineffectiveness of counsel have already been addressed in this opinion and there has either been no showing of deficient performance or no showing of prejudice, or appellant has failed to present substantial evidence to support the claim. The remaining claim is that trial counsel's performance was deficient for failure to inform the trial court on the day of the verdict about statements made by a juror to the effect that she was coerced by other members of the jury to convict appellant. This issue was raised as a point in appellant's motion for new trial. Appellant contends that trial counsel should have informed the trial court on the day of the verdict, and that failure to do so prejudiced appellant as to any relief the trial court could have given at that time. This claim of ineffective assistance, however, was not presented to the motion court in either appellant's pro se or amended motion. Claims which are not presented to the motion court cannot be raised for the first time on appeal. *Amrine v. State*, 785 S.W.2d 531, 535[8] (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990).

The record shows that appellant has demonstrated either no deficient performance or no prejudice with respect to each of the claims of ineffective assistance presented to the motion court. We find no error in the motion court's denial of those claims. Where the appellate court finds no error in any of the challenged rulings, appellant's assertion of cumulative error must also be denied. *State v. Turner-Bey*, 812 S.W.2d 799, 809[21] (Mo.App.1991).

Judgments affirmed.

CARL R. GAERTNER, P.J., and CRANE, J., concur.