STATE of Missouri, Respondent,

v.

Joshua SLATER, Appellant.

No. WD 64903.

Missouri Court of Appeals,
Western District.

June 20, 2006.

Rebecca L. Kurz, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, Judge.

Joshua Slater was convicted following a jury trial of one count each of burglary in the second degree, Section 569.170, RSMo 2000; resisting arrest, Section 575.150, RSMo 2000; assault of a law enforcement officer in the first degree, Section 565.081, RSMo 2000; armed criminal action, Section 571.015, RSMo 2000; and tampering in the first degree, Section 569.080.1(2), RSMo 2000. He was sentenced as a prior offender on December 16, 2004, to consecutive terms of seven years imprisonment on the burglary and tampering counts, thirty years imprisonment on the assault and armed criminal action counts, and four years imprisonment on the resisting arrest count. Mr. Slater timely filed a notice of appeal.

Mr. Slater asserts two points on appeal, expressed as a single point in his brief. He claims the trial court erred in permitting a police officer, unqualified as an expert witness, to testify in rebuttal that the shoes Mr. Slater was wearing when arrested did not appear to exhibit characteristics that caused marks on the front door of the burglarized residence, apparently caused by the effort to "kick it in" to effect the burglary, evidence contrary to Mr. Slater's position that he had entered the burglarized residence and, therefore, was not the driver of the "get away" vehicle, a stolen white SUV. The driver of the vehicle never exited the vehicle and, during his attempt to get away, committed numerous criminal acts in the attempt to evade law enforcement authorities, for which Mr. Slater was charged and convicted.

The judgment of convictions is affirmed.

## Facts

Mr. Slater does not contest the sufficiency of the evidence, and a synoptic statement of the greater event is sufficient with a more comprehensive statement of the facts applicable to the issue raised on appeal. On December 19, 2003, a neighbor observed a man kicking the front door of a house located across the street from her own residence. She called 911 and informed the dispatcher that she observed two men wearing coats, gloves, and jeans enter the residence and remove items, placing them inside an SUV. She observed that a man was in the driver seat of the SUV, but she could not see him well enough to identify him. He remained in the vehicle, never entering the dwelling with the other men. Police officers were dispatched to the scene and arrived after the SUV had been relocated to the street in front of the house. Chief of Police Ken Wilson, Smithville Police Department, and Sergeant Michael Lewark arrived at the scene in a single police vehicle, and Chief Wilson drove the vehicle to a position of "hood to hood" with the white SUV. The police officers observed the driver, the only person in the SUV, who was wearing a black leather jacket and was unshaven. Sergeant Lewark exited the police vehicle and approached the driver of the SUV with his sidearm drawn and directed him to exit the vehicle. The driver responded by driving the SUV across a residential lawn, back onto the street, and fleeing the scene. As Officer Thomas Ross approached the crime scene in another police vehicle, the white SUV passed him at a high rate of speed. He observed a single white male driving the vehicle. He saw no other person in the vehicle but stated at trial that from his view of the vehicle, he could not be certain that no other person could have been in the vehicle. Chief Wilson and Sergeant Lewark reentered their police vehicle and followed the SUV, never losing sight of it. Other police officers were dispatched to join the effort to arrest the driver of the SUV. As Mr. Slater was fleeing, Billy Coleman and Jerry Farr were apprehended at the burglarized residence by other police officers as participants in the burglary.

The SUV approached police officers Erin Knox and Anthony Roetman, who were in a police vehicle, at another location near the scene of the burglary. The officers attempted to stop the SUV. Officer Roetman, having exited the police vehicle, stood in the SUV's lane of traffic as it approached. Both officers observed the face of the driver for several seconds, noting that the driver had short hair and was unshaven. Officer Knox, in uniform, also exited the police vehicle. She approached the driver's window, and she, too, noted that the driver was not clean-shaven. She observed that the driver was wearing a black hooded jacket or leather coat. The SUV accelerated, swerving toward the

nonuniformed Roetman, requiring him to dive into a ditch to avoid being struck. After the white SUV passed them, the two officers reentered the police vehicle and gave chase. As the driver endeavored to evade the following police officers, the SUV attained speeds exceeding one hundred miles per hour several times. Eventually, the SUV struck a light pole, knocking it down, and was driven into a parking lot where it struck a snow bank and stopped. The driver, unable to open the driver side door, exited the vehicle through the front door passenger window and fled afoot into a nearby building where he was ultimately apprehended by Officer Roetman and other police officers. Officer Roetman identified Mr. Slater as the man he saw driving the SUV. He was unshaven and wearing a leather jacket when arrested, comporting with the appearance of the driver of the SUV as observed by the several police officers in pursuit of the vehicle.

When caught by police, Mr. Slater was out of breath and sweating profusely. Police officers searched him and found pieces of broken glass in the left pocket of his jacket that matched the glass broken out of the driver's side front window of the SUV. The right pocket of his jacket contained a Motorola-type walkie-talkie, and near a fence where the SUV had stopped, police officers found a pair of white gloves, presumed to have been worn by the SUV driver because they were not covered with snow or dirt.

The white SUV was a 1995 white GMC Jimmy, which had been reported stolen on December 17, 2003.

### Contested Trial Testimony

Following the State's evidence, Mr. Slater presented evidence, including his testimony, after which the State presented rebuttal evidence. Mr. Slater's defense was that he participated in the burglary, but he did not drive the white SUV. Thus, admitting to the burglary charge, he denied culpability for the other charged offenses. These were resisting arrest, assault of a law enforcement officer in the first degree, and armed criminal action, which were based on the conduct of the SUV driver, and tampering in the first degree, which was based on the claim that he was in possession of and driving the stolen SUV. Officer Lewark testified, over the objection of the defense, that the witness was not competent to render an expert opinion that seven marks on the front door of the burglarized residence were scuff marks that appeared to be inconsistent with having been caused by the shoes that Mr. Slater and Billy Coleman, the second person arrested at the scene of the burglary, were wearing when they were arrested but did appear to match the shoes Jerry Farr was wearing when he was arrested at the crime scene.

Mr. Slater claims as his first point that the testimony of Officer Lewark should not have been admitted because he was told by the State that no footprint evidence existed, and the testimony was not provided to him by the State before trial. The State responds that Mr. Slater asked in discovery whether the State possessed footprints taken at the scene of the burglary, to which it responded that it did not, and that the testimony was rebuttal evidence, and rebuttal evidence need not be disclosed before trial.

### Standard of Review

■ The standard of review is whether the trial court abused its discretion when admitting or excluding evidence at trial over the objection of a party. In the recent case of *State v. Forrest*, 183 S.W.3d 218 (Mo. banc 2006) the Supreme Court stated:

A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. [T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, [appellate authority] reviews the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.' Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.

*Id.* at 223–24 (internal citations omitted).

### Claim that Officer Lewark's rebuttal testimony was improperly admitted because he was not qualified as an expert

■ Excluding the burglary itself, only the driver of the white SUV committed the criminal acts for which Mr. Slater was charged and convicted. If he was not the driver when the acts occurred, he is innocent of the criminal charges attendant to the conduct of the driver, or in the case of tampering, to the stolen vehicle. Mr. Slater's opposition to Officer Lewark's testimony that the scuff marks on the front door of the burglarized house appear to be inconsistent with Mr. Slater's shoes is disputed because it does not support his claim that he entered the house and was not the driver of the SUV, who never departed the vehicle at the residence before attempting to escape. Even if the court abused its discretion by allowing Officer Lewark's testimony, there is "no reasonable probability that the trial court's error affected the outcome of the trial" and, thus, no prejudice, because the evidence that Mr.

Slater was driving the vehicle is overwhelming even without Officer Lewark's testimony. *Id.* at 224.

The evidence that Mr. Slater was the driver of the white SUV was overwhelming, and whether the trial court abused its discretion by admitting Officer Lewark's observations regarding the marks on the front door of the burglarized residence and the shoes of the persons arrested need not be determined. Mr. Slater was observed as the driver of the vehicle by at least three police officers. He was seen exiting the vehicle after the "chase" and shortly before his arrest; he was observed entering a nearby building after he departed the vehicle through the front passenger window of the SUV; and he was arrested within the building perspiring profusely, a physical condition that corroborates the evidence that he ran from the location where the vehicle was abandoned. Chief of Police Wilson identified Mr. Slater at trial as the person he saw in the driver's seat when he first arrived at the scene of the burglary and drove his police vehicle to a stop "hood to hood" with the white SUV and when the vehicle fled. Officer Erin Knox identified Mr. Slater at trial as the driver she saw driving the white SUV when she and Officer Anthony Roetman attempted to stop the vehicle and as the driver attempted to strike Officer Roetman with the vehicle. Officer Roetman identified Mr. Slater at trial as the person he saw driving the SUV during the attempted escape, as the person he saw exit the passenger side front window of the white SUV and flee after it finally stopped, and as the person that he helped handcuff when Mr. Slater was arrested. Thus, Mr. Slater was identified as the driver of the white SUV when it departed the burglary scene, during the attempted escape, and when he was arrested. The white SUV was constantly observed by at least one law enforcement officer from the time it

departed the burglary scene until it stopped. No other person was observed in the white SUV from the commencement of the escape episode to its conclusion when he was observed exiting the vehicle through the window of the SUV, and no other person was observed in the vehicle or attempting to flee it after it stopped. The evidence is overwhelming that Mr. Slater was the driver of the vehicle and that he committed the offenses for which he was charged. Thus, even if the court erred in permitting the introduction of Officer Lewark's testimony that the scuff-marks on the front door of the burglarized residence did not match the shoes Mr. Slater was wearing when he was arrested, which need not be determined, Mr. Slater was not prejudiced. The evidence was so overwhelming that a reasonable person must conclude that the outcome of the trial would have been no different had the evidence been excluded.

### Claim of Discovery Violation

As a second point, Mr. Slater claims that "the State committed a discovery violation by telling defense counsel that there was no footprint evidence recovered from the burglary scene and then failing to correct the misinformation by disclosing Lewark's opinion to the defense." The State responded that it had no footprint evidence to disclose and that the disputed testimonial evidence was rebuttal evidence and that it did not commit a discovery violation because it is not required to disclose rebuttal evidence prior to trial.

Prior to trial, Mr. Slater filed "Defendant's Request for Discovery," in accordance to Rule 25.03, a general request for discovery. Subsequently, he filed a "Motion for Additional Discovery," as provided by Rules 25.03 and 25.04 and for disclosure of exculpatory evidence as required by under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The

request sought "additional discovery in the form of footprints taken at the scene of the alleged burglary at 101 Shasta Daisy Drive," and copies of fingerprints taken at the crime scene and/or from the SUV. The court conducted a pre-trial hearing at which another prosecutor stated that "[t]here's no indication any footprints or latent fingerprints were recovered from the scene of the burglary or from the SUV ... If there were, we will certainly turn them over and provide them to Mr. Lance and his client." The court informed the prosecutor that the State was "probably obligated to do that ... outside the motion," and the prosecutor responded, "Yes, sir ... Absolutely, Judge." The court asked the prosecutor, "Ms. Moore, you're affirmatively representing as an officer of the Court that there are no fingerprints or footprints, no evidence of that sort, from either scene?" and, again, she responded, "That is my understanding, Your Honor. Of course, if the State becomes aware that such evidence exists, we will immediately turn that over to the defense. But it is my understanding today that there are no footprints recovered from the scene." The court then asked the prosecutor to contact the Smithville Police Department to be certain that no footprint or fingerprint evidence exists, to which prosecuting attorney responded, "We can certainly do that, Judge." The court overruled Appellant's "Motion for Additional Discovery" "as unnecessary because the law requires everything that the motion seeks without the necessity of the motion if such items are in existence." No footprint evidence was produced by the State, and none was introduced at trial.

At trial, when defense counsel objected to the State's offer of the Lewark testimony, the State responded that Officer Lewark's testimony would not be about footprints and was not offered as expert testimony. The court was told that Officer Lewark would testify about his obser-

vations of the shoes of the suspects seized and the marks left on the front door of the door of the burglarized residence. The court overruled defense counsel's objections and allowed Officer Lewark's testimony, comparing it to a layperson's testimony regarding a handwriting sample.

Officer Lewark did not testify about footprints or fingerprints, the subject of the discovery motion. The testimony was about the officer's observations regarding marks made on the front door of the burglarized residence and the shoes worn by the three persons believed to have burglarized the house when they were arrested. The testimony was not about footprints. The evidence was offered in rebuttal to Mr. Slater's defense that he was not the driver of the SUV because he, unlike the driver, left the SUV and entered the burglarized residence.

Rebuttal evidence is any evidence that directly or indirectly explains, counteracts, repels or disproves the defendant's evidence, either directly or by implication, and is admissible even if it was available during the State's case-in-chief. *State v. Hamilton,* 892 S.W.2d 371, 379 (Mo.App. E.D.1995). The State is normally under no obligation to disclose rebuttal witnesses or an item of physical evidence that rebuts a defendant's theory of defense. *State v. Clark,* 975 S.W.2d 256, 263 (Mo.App. S.D.1998). The only exceptions to the general rule are where the witness or physical evidence is presented to rebut an alibi defense or a defense of mental disease or defect. *Id.* Officer Lewark's testimony was rebuttal evidence. The State did not commit a discovery violation.

The judgment is affirmed.

All concur.