STATE of Missouri, Respondent,

v.

Ronald Lee MATHESON, Appellant.

No. WD 50587.

Missouri Court of Appeals,
Western District.

Jan. 30, 1996.

554

Richard A. Euler, Maryville, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Ronald Matheson was convicted by a jury of assault in the third degree, § 565.070, RSMo 1986, and was sentenced to 90 days imprisonment. He appeals his conviction on four grounds: (1) that his oral and written statements should have been suppressed; (2) that a police witness' testimony regarding the victim's statements about the assault should not have been admitted; (3) that the verdict director erroneously failed to define "recklessly"; and (4) that admission of evidence concerning the victim's incompetency was prejudicially erroneous. We find that none of these points have merit, and affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The charge against Mr. Matheson arose from an altercation between Mr. Matheson and Mr. Marion Adkins. The evidence showed that, on March 14, 1994, Mr. Adkins came to Mr. Matheson's home to ask Mr. Matheson to read him a letter which Mr. Adkins was unable to read for himself. Mr. Matheson testified at trial that he at first refused to read the letter to Mr. Adkins, and instead just wadded it up and tossed it on the ground. Mr. Matheson claimed that he then picked up the letter and read it to Mr. Adkins. He also admitted that at some point the two had an altercation during the course of which Mr. Adkins' glasses caused a cut across Mr. Adkins' nose and under his eyes.

The State presented the testimony of Mr. Kenton Nowling, who lives across the street from Mr. Matheson. Mr. Nowling testified that at about the time of the above incident he heard yelling and screaming outside. He said that he looked towards the Matheson home and saw Mr. Matheson and Mr. Adkins arguing. He proceeded to the Matheson home, where he saw Mr. Matheson yell at Mr. Adkins and strike Mr. Adkins in the face, knocking off Mr. Adkins' glasses. Mr. Adkins then sat down on the porch. Mr. Nowling ignored Mr. Matheson's order that he "get off his property," and told Mr. Matheson that he "wasn't going to sit here and watch this." Mr. Nowling retrieved Mr. Adkins' broken glasses for him and arranged a ride home for Mr. Adkins with a person delivering meals in the area.

The incident was reported to the police, and Deputy Terry Edwards was sent to investigate. Deputy Edwards testified at trial that he met with Mr. Adkins at a local cafe and asked him about the scratch mark across the bridge of his nose and the cut under his lower right eye. Over objection, Deputy Edwards was allowed to testify that Mr. Adkins had responded that he had received the injuries at the residence of Mr. Matheson.

Deputy Edwards testified that he returned Mr. Adkins home and then went to speak with Mr. Nowling regarding his knowledge of the incident. Deputy Edwards further testified that the next morning, March 15, 1994, he went to Mr. Matheson's residence to question Mr. Matheson about his version of the incident. Mr. Matheson admitted that he was aware of the episode. It is undisputed that Deputy Edwards did not at this point advise Mr. Matheson of his *Miranda* rights. He simply told Mr. Matheson that he wanted to talk with him further and suggested that the two of them could talk in Mr. Matheson's house or in Deputy Edwards' car, whichever Mr. Matheson preferred. Mr. Matheson chose to speak with Deputy Edwards in Deputy Edwards' car, which was parked in front of Mr. Matheson's residence.

All involved agree that Mr. Matheson was not formally under arrest while speaking with Deputy Edwards in the car, and that Deputy Edwards did not threaten or coerce Mr. Matheson into making any statements. Mr. Matheson testified, however, that he believed at the time that he would not have been permitted to leave the car if he had tried to do so. In any event, Mr. Matheson proceeded to provide Deputy Edwards with both a verbal and a written statement as to his view of the events that had transpired.

Mr. Matheson was arrested two weeks later on April 1, 1994 and charged with assault. Following a trial at which Mr. Matheson, Mr. Nowling and Deputy Edwards were the primary witnesses, Mr. Matheson was convicted of third degree assault. This appeal followed.

## II. THE TRIAL COURT DID NOT ERR IN ADMITTING MR. MATHESON'S STATEMENT TO THE POLICE GIVEN PRIOR TO RECEIVING A MIRANDA WARNING

Mr. Matheson claims that the statement he gave to Deputy Edwards prior to his arrest should have been suppressed because he was not given a *Miranda* warning prior to making the statement despite the fact that he was under arrest-like restraint in Deputy Edwards' vehicle when he gave the statement.

### A. Standard of Review.

■ In determining whether the trial court properly refused to suppress evidence, we will disregard any evidence and inferences contrary to the ruling and will defer to the court's determinations as to the credibility of witnesses and the weight of the evidence. If, viewing the facts and reasonable inferences arising therefrom in the light most favorable to the court's order, we find that sufficient evidence supports the order, we will affirm. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990); *State v. Williams,* 861 S.W.2d 670, 674 (Mo.App.1993).

### B. Miranda Warnings Were Not Required.

The police are not required to give *Miranda* warnings before asking a person preliminary or investigative questions. As stated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

> Our decision is not intended to hamper the traditional function of police officers in investigating crime.... [G]eneral questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.

*Id.* at 477–78, 86 S.Ct. at 1629; *see also State v. Middleton,* 854 S.W.2d 504, 511 (Mo.App. 1993).

■ Following *Miranda,* numerous Missouri cases have held that preliminary, investigatory questioning by the police does not constitute custodial interrogation requiring *Miranda* warnings. *See, e.g., State v. Crane,* 841 S.W.2d 271, 273 (Mo.App.1992). Rather, "'[c]ustodial interrogation' occurs only when the suspect is formally arrested or is subjected to arrest-like restraints." *Middleton,* 854 S.W.2d at 516.

*State v. Feltrop,* 803 S.W.2d 1, 13 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991), provides a good example. In that case, the defendant was contacted by a police officer at his home. The defendant followed the officer back to the police station where the defendant was questioned. He initially was questioned about his relationship with the victim, why he had reported her missing and where he thought she might be. After making an incriminatory statement, the defendant was read his *Miranda* rights and later the defendant confessed to the crime with which he was charged.

The defendant in *Feltrop* claimed that the questioning prior to his confession was custodial interrogation and that his statements should be suppressed because he was not advised of his *Miranda* rights. The court rejected this contention, finding that the defendant had voluntarily followed the officer to the station and, at all times prior to making the incriminating statement, the defendant was free to depart. *See also Crane,* 841 S.W.2d at 273.

■ *Feltrop* and similar cases teach us that there is no custodial interrogation when a suspect is questioned if he is not under arrest or otherwise restrained of his liberty. This is true even if the defendant was then a suspect in the minds of the officers. For this reason, in the absence of arrest or a similar restraint, questioning a defendant prior to giving him *Miranda* warnings is not error. *Feltrop,* 803 S.W.2d at 13.

■ Applying these principles to this case, we do not find that the mere fact that questioning occurred in a police car made the setting custodial. First, Deputy Edwards offered to speak to Mr. Matheson in the Matheson home. Mr. Matheson could have accepted this offer, or suggested another location. Instead, he voluntarily chose to

speak to Deputy Edwards in Deputy Edwards' car.

Second, although Mr. Matheson was in a police car, the evidence supported a finding the he spoke with the officer voluntarily and was free to discontinue answering questions at any time. Moreover, at the time he questioned Mr. Matheson, Deputy Edwards had not arrested him or even decided that he wanted to arrest him. Deputy Edwards was simply following up a complaint by Mr. Adkins. In fact, Mr. Matheson was not arrested for some two weeks after he was first questioned by Deputy Edwards. For these reasons, the setting was not custodial and no *Miranda* warnings were required. Point I is denied.

### III. *DEPUTY EDWARDS WAS PROPERLY PERMITTED TO EXPLAIN THE REASONS FOR HIS INVESTIGATION OF MR. MATHESON*

In his second point on appeal, Mr. Matheson argues that the trial court improperly permitted Deputy Edwards to testify as to what the victim had told him about the assault. In particular, Deputy Edwards testified that:

> I was aware of the cut on the nose and under the eye. Okay. I asked Mr. Adkins where he received this and where it took place. He stated to me it was at a Ronald Matheson's residence at 211 Frame Street in Craig.

Mr. Matheson objects that, because the victim was not available to testify, Deputy Edwards' statements constituted inadmissible hearsay offered to prove the truth of the matter asserted. As such, he says, the statements should have been excluded.

The State argues that information about Mr. Adkins' statement to Edwards was admissible because it was not hearsay in that it was not offered for its truth. Rather, the State argues, the evidence was offered to explain how and why Deputy Edwards came to question Mr. Matheson. As such, it was admissible.

■ We agree. The evidence was properly admitted under the well-recognized rule in Missouri permitting a police officer to testify about statements made to the officer by a witness to the crime in order to explain the officer's subsequent actions in investigating the crime. *See, e.g., State v. Murray,* 744 S.W.2d 762, 773 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988)(testimony admitted to explain officer's subsequent action in reporting to crime scene); *State v. Brooks,* 618 S.W.2d 22, 25 (Mo. banc 1981) (testimony admitted to explain officer's subsequent action and supply relevant background and continuity to the action); *State v. Gee,* 822 S.W.2d 892, 895 (Mo.App.1991) (testimony admitted to explain the commencement of officer's investigation of defendant). This is a specific application of the rule that testimony of what another said is not inadmissible hearsay if it is simply offered to explain the witness' conduct rather than as proof of the facts in the other's statements.

Mr. Matheson recognizes that Missouri has adopted this exception, but argues that it does not apply here. Rather, Mr. Matheson argues, this case is governed by *State v. Kirkland,* 471 S.W.2d 191 (Mo.1971). *Kirkland* held that it is error to apply this rule to justify admission of what would otherwise constitute hearsay testimony if that testimony is relied on heavily by the State to prove an essential element of the case. *Id.* at 194–95.

We do not find *Kirkland* applicable here. It has been strictly limited to situations in which the disputed testimony was central to the State's case. Here, the testimony was merely collateral. Deputy Edwards simply testified that Mr. Adkins had told him that the injuries occurred on Mr. Matheson's property. He did not state that Mr. Adkins had told him that Mr. Matheson was the one who had inflicted the injuries.

■ Moreover, even should Deputy Edwards' testimony have been excluded under *Kirkland,* we would not find its admission caused prejudicial error. Mr. Nowling also testified as to where the injury occurred, as did Mr. Matheson himself. It is well-settled that error in admitting evidence will not be considered prejudicial where similar evidence is properly admitted elsewhere in the case or

has otherwise come into evidence without objection. *See, e.g., State v. Zagorski,* 632 S.W.2d 475, 478 n. 2 (Mo. banc 1982); *State v. Jones,* 854 S.W.2d 60, 62 (Mo.App.1993); *State v. Marvel,* 756 S.W.2d 207, 213 (Mo. App.1988).

For these reasons, Point II is denied.

## IV. *NO PREJUDICIAL ERROR OCCURRED AS A RESULT OF THE FAILURE TO DEFINE "RECKLESSLY" IN THE JURY INSTRUCTIONS*

Mr. Matheson also argues that he is entitled to a new trial because the verdict director erroneously failed to define the term "recklessly." The verdict director, Instruction No. 5, stated in relevant part:

If you find and believe from the evidence beyond a reasonable doubt:

That on or about March 14, 1994, in the County of Holt, State of Missouri, the defendant attempted to cause and *recklessly caused* physical injury to Marion Dale Adkins, by hitting him with his hands,

then you will find the defendant guilty of the class A misdemeanor of assault in the third degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(emphasis added).

Instruction No. 5 was based on MAI–CR 3d 319.16. Note On Use 7 to MAI–CR 3d 319.16 requires that if the word "recklessly" is used in the instruction it should be defined to state that recklessly means:

to consciously disregard a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

■ The State concedes that this definition was improperly omitted, but notes that instructional error does not automatically require reversal. Rather, its prejudicial effect is to be "judicially determined." *See* Rule 28.02. Moreover, in deciding the prejudicial impact of the omission, we may consider the fact that Mr. Matheson failed to raise this error until he filed his motion for new trial. *State v. Green,* 812 S.W.2d 779, 787 (Mo.App. 1991).

The State argues that, even without definition, the word "recklessly" was used in its commonly understood sense and so was adequately understood by the jury. We agree. Myriad cases recognize that where an instruction uses a word in its ordinary, common-sense meaning, then no confusion occurs simply because the word is not defined. *See, e.g., State v. Dighera,* 617 S.W.2d 524, 534 (Mo.App.1981); *State v. Rodgers,* 641 S.W.2d 83, 85 (Mo. banc 1982). *Compare State v. Ogle,* 627 S.W.2d 73, 76 (Mo.App.1981), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 91 (1984)(meaning given by statute to term "serious physical injury" was not the same as lay meaning of term and thus it needed to be defined for jury).

Here, Mr. Matheson does not even argue that "recklessly" was used in other than its ordinary sense in MAI–CR 3d 319.16. Even had he done so, his argument would not be successful. The definition of "recklessly" set out above is fully consistent with the lay definition of that word which defines "reckless" as "lacking in caution" and "marked by a lack of foresight or consideration: improvident, negligent." *Webster's Third New International Dictionary* 1896 (Unabridged Ed.1993). This is consistent with the instructional definition of "recklessly" set out above.

This conclusion is buttressed by the fact that MAI–CR 2d, which was in effect until the publication of MAI–CR 3d in 1987, did *not* define the term "recklessly." Yet, no court held that the word should nonetheless be defined because its use without definition could confuse the jury. To the contrary, two cases specifically held that, in the absence of a definition in MAI–CR 2d, it would have been error to define recklessly for the jury. *See State v. Francis,* 674 S.W.2d 49, 50 (Mo. App.1984); *State v. Harris,* 670 S.W.2d 73,

81 (Mo.App.1984).[1]

While the Criminal Instructions Committee did include a Note on Use requiring that the word "recklessly" be defined at the time it developed the MAI–CR 3d, it thus did not do so based on a case holding that "recklessly" had to be defined in order to avoid jury confusion. It appears that the inclusion of this definition was simply part of an overall approach by the drafters of MAI–CR 3d to define all of the various types of intent in the manner they are defined in Section 565.070.1, RSMo 1986, and was not due to a specific belief that the word "recklessly" might be misunderstood without further definition.[2]

■ Applying this law to the facts of the instant case, we believe that the failure to define "recklessly," while erroneous, was not prejudicially so because the word "recklessly" was used in its ordinary and commonly understood meaning and would not have been misunderstood by the jury. For this reason, Point III is denied.

## V. ADMISSION OF EVIDENCE REGARDING VICTIM'S INCOMPETENCE

Finally, Mr. Matheson claims that the State improperly failed to disclose prior to trial that it intended to ask the Court to take judicial notice of a court file which included a legal determination that Mr. Adkins was incompetent and that a guardian had been appointed for him. At trial, Mr. Matheson's counsel objected that this failure violated the discovery rules, that the evidence was irrelevant in any event and that it should be

excluded. The trial court overruled defense counsel's objection. Mr. Matheson did not then request a delay or continuance so that he could review the records of Mr. Adkins' incompetency. Rather, the prosecutor simply proceeded to state on the record:

> Your Honor, ... at this time I'd ask the Court take judicial notice of the file CR694–4P, where Marion Dale Adkins, age 77, was declared incompetent and had a guardian appointed by the Probate Court of Holt County, Missouri, on February 15, 1994.

No further mention was made of this matter.

We agree with Mr. Matheson that the State should have revealed its intent to introduce this evidence during discovery. Rule 25.03(A)(6) requires that the State disclose to the defendant any papers or documents which it intends to introduce at the hearing, if the defendant makes a written request for such items. Mr. Matheson made such a written request prior to trial, but the State failed to produce the file.

■ Failure of the State to disclose matters in discovery does not necessarily require their exclusion from evidence, however. The court may permit their admission if the defendant was already aware of the information or otherwise was not surprised by it. See State v. Sykes, 628 S.W.2d 653, 657 (Mo. banc 1982); State v. Parry, 684 S.W.2d 441, 445 (Mo.App.1984). Moreover, even evidence of which the defendant was not aware may be admitted, in the judge's discretion, if the judge permits the opposing side to prepare

1. Moreover, we note that the word "recklessly" is still used in MAI 10.01 without further definition. While this civil jury instruction is only of tangential relevance in this criminal case, it is instructive that in adopting MAI 10.01 the Missouri Supreme Court said that it was based on Restatement (Second) of Torts § 908(2) (1979), which states in part that punitive damages can be awarded because of defendant's "reckless indifference to the rights of others." The Supreme Court then stated that the Restatement's language "properly sets out the law in language readily understood by lawyers and lay people alike." Burnett v. Griffith, 769 S.W.2d 780, 789 (Mo.1989). If the Supreme Court believes that the term "recklessly" is a term "readily understood by lawyers and lay people alike" as used § 908(2) and in the punitive damage instruction, there is every likelihood the Supreme Court

would also find that the term "recklessly" is a term readily understood by lawyers and lay people alike when used in the third degree assault instruction.

2. We are aware of only one published decision, State v. Poe, 857 S.W.2d 419, 424 (Mo.App.1993), decided after MAI–CR 3d was effective in which the defendant raised the failure to define "recklessly" as error. This Court found that the omission was not prejudicial. That case is not particularly helpful to our analysis here, however, both because the defendant had failed to raise the issue at trial or in his motion for new trial, and because the word was properly defined in another instruction submitting a different charge to the jury.

to meet the evidence by granting it a continuance, by permitting opposing counsel an opportunity to depose the witness or review the records sought to be admitted, and so forth. This is specifically permitted by Rule 25.16, which states:

> If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court *may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances.*

Rule 25.16 (emphasis added). *See also State v. Neil,* 869 S.W.2d 734, 738 (Mo. banc 1994); *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981).

■ Here, Mr. Matheson failed to request a delay to review the record the State introduced, and he did not request a continuance. He has failed to identify any basis he would have had to object to admission of the evidence of Mr. Adkins' incompetence had he known earlier that the State would introduce this evidence, and has failed to demonstrate any other prejudice resulting from the State's discovery error. Moreover, the evidence did not go to a material issue, and Mr. Matheson was aware, without regard to the evidence, that Mr. Adkins was incompetent.

In this situation, we do not find that the discovery error resulted in fundamental unfairness, nor do we believe its admission affected the outcome of the case. No reversible error occurred. *See State v. Holmes,* 823 S.W.2d 55, 58 (Mo.App.1991); *State v. Jackson,* 780 S.W.2d 114, 115 (Mo.App.1989). For these reasons, we affirm the judgment of the court below.

All concur.