

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

STATE OF MISSOURI,        )
       )
       **Respondent,**       )    **WD83487**
**v.**        )
       )    **OPINION FILED:**
       )    **June 15, 2021**
**MIGUEL A. TORRES,**        )
       )
       **Appellant.**     )

**Appeal from the Circuit Court of Livingston County, Missouri**
**The Honorable Ryan W. Horsman, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Karen King Mitchell, Judges

Miguel Torres appeals, following a jury trial, his convictions of three counts of possession of an unlawful item in a county jail, § 221.111,[1] and one count of damage to jail property, § 221.353, for which he was sentenced as a persistent offender to concurrent terms of twenty years' imprisonment for each possession count and five years' imprisonment for the damage to jail property. Torres raises three claims on appeal. First, he argues that the court erred in admitting evidence of his prior convictions because the State violated Rule 25.03[2] by failing to timely

---

[1] All statutory citations are to the Revised Statutes of Missouri (2016), as updated through the 2018 Supplement.

[2] All rule references are to the Missouri Supreme Court Rules (2019), unless otherwise specified.

disclose the evidence. Second, he argues that his right to be free from double jeopardy was violated by his convictions on Counts II and III because § 221.111 is ambiguous as to the allowable unit of prosecution. And, third, he argues that the court erred in refusing his proposed instruction on an entrapment defense. Finding no error, we affirm.

## Background

In September 2018, Torres was detained at the Daviess-DeKalb Regional Jail (DDRJ), where Keven Jacques worked as a sergeant and assistant shift commander. On September 22, 2018, Torres advised Jacques that detainees were making weapons out of a missing food tray. Torres suggested that Jacques not act on the information at that time to avoid the risk that the weapons would be moved. Two days later, Jacques met with Torres again to follow up on the prior report, and, at that time, Torres produced "a cardinal tool and two different weapons that appeared to be made out of the tray that was missing."[3] Torres also advised Jacques of where the weapons had been hidden. Torres indicated that the weapons had been created in E Hall (the protective custody area) and were being passed to detainees in B tank through the cleaning cart inside the mop bucket.

The same day that Torres provided the weapons to Jacques, Lieutenant Jeremy Allen of the DDRJ conducted a sweep of B tank, where Torres was housed, and discovered a little sharp piece of metal hidden on the top of the doorframe near Torres's bunk. A still image captured from video surveillance showed Torres accessing the metal piece two weeks earlier on September 9, 2018.

---

[3] The prosecutor described these items as a braided piece of string and two plastic knives.

2

Jacques met with Torres again on September 28, 2018, and, at that time, Torres advised that the detainees now had a plastic cereal bowl that they were using in an attempt to create another weapon by microwaving and manipulating the plastic.

On September 26, 2018, Torres met with Investigator James Baker of the DDRJ and reported that "inmates in E hall were making weapons that were being transferred on the mop bucket or cleaning cart tools under the bucket, and they were being taken to B tank to give to another inmate to take revenge on a guard." Following Torres's reports, Baker began looking into Torres's claims by first reviewing video footage from E hall. After reviewing the video footage of the areas Torres identified, Baker was unable to confirm Torres's reports, so he went back to where the weapons were found and started working backwards to discern the source of the weapons. He reviewed video footage depicting Torres from August 27, 2018, through September 24, 2018.

A video image from September 3, 2018, showed Torres sharpening the small metal blade found above his doorframe and then brushing the floor of his cell to disseminate the shavings. Another video clip from the same day showed Torres with a cord, stretching and twisting it with a pencil. Video footage from September 12, 2018, showed Torres placing the same cord around another inmate's neck, demonstrating how it could be used. Two days later, another clip showed Torres "pointing out toward the walkway where the guards traverse back and forth, and he's showing . . . cutting motions as how you would use that cord." More footage from later that day showed Torres shaving his arm with the small metal blade to test its sharpness.

Video from September 19, 2018, showed Torres hiding a meal tray under his mattress, and video from the following day depicted Torres with a meal tray that appeared to be missing a portion. Another video from September 22, 2018, depicted Torres making a sawing motion, with

3

a partial meal tray sitting in the back of his cell. Video from later that morning showed Torres hiding a homemade knife in the bed frame of the top bunk. On September 23, 2018, Torres was again seen on video making a sawing motion in his cell, followed by him brushing off debris, and holding a piece of a meal tray. Another clip from that day showed Torres sliding a piece of paper in a gap near a shower stall to test if a knife would fit. And yet another clip from later that day showed Torres holding the longer of the two knives. A final clip showed Torres placing the knives in his sock, where he later removed the knives to provide them to Jacques.

The State charged Torres with three counts of possession of an unlawful item in a county jail based on the metal blade (Count I), the plastic knives (Count II), and the braided cord[4] (Count III); one count of damage to jail property based on the destroyed meal tray (Count IV); and one count of making a false report based on Torres's representations to Baker about other inmates fashioning weapons (Count V). At a pre-trial hearing on October 8, 2019, the State indicated that it had not yet charged Torres as a persistent felony offender but suggested, "That likely will happen the morning of trial as well." Then, on October 21, 2019, three days before trial, the State filed an amended information, charging Torres as a persistent felony offender. The following day, the State filed a second amended information, deleting two of the four alleged prior offenses from the persistent offender allegations. On the morning of trial, the court took up the State's request to file the second amended information and, at that time, defense counsel objected, arguing that there had been a discovery violation resulting from the State's late disclosure of the prior offenses underlying the persistent offender allegations. In response, the State argued that it had just received the certified copies of Torres's prior convictions the day before after having "a lot of trouble getting them," but it had immediately disclosed them to defense counsel. The State then

---

[4] The State characterized the cord as a garrote, which is "an implement . . . for strangulation." GARROTE, available at https://www.merriam-webster.com/dictionary/garrote (last accessed March 31, 2021).

offered the certified copies of Torres's prior convictions into evidence, defense counsel objected on the basis of a claimed discovery violation, and the court overruled defense counsel's objections, accepted the exhibits, and found Torres to be a persistent felony offender.

Following the presentation of evidence, the jury found Torres guilty, as charged, in Counts I-IV and not guilty of Count V. The court sentenced Torres, as a persistent offender, to twenty years' imprisonment for each of the possession counts and five years' imprisonment for the damage to jail property count, with all sentences to run concurrently. Torres appeals.

**Analysis**

Torres raises three claims on appeal. First, he argues that the court erred in admitting evidence of his prior convictions because they should have been excluded as a result of the State's late disclosure in violation of Rule 25.03. Second, he argues that the court plainly erred in accepting the jury's verdicts for both Counts II (possession of the plastic knives) and III (possession of the garrote) because he simultaneously possessed the items and separate convictions constituted multiple punishments for the same crime in violation of his right to be free from double jeopardy. And finally, Torres argues that the court erred in refusing his proffered instruction on the entrapment defense to the charges in Counts II and III. Finding no error, we affirm.

I. **Torres has failed to demonstrate either a discovery violation or resulting fundamental unfairness from admission of the certified copies of his prior convictions.**

In Point I, Torres argues that the State violated Rule 25.03 by failing to disclose State's Exhibits 100 and 101 (his certified prior convictions) until the day before trial. He concludes, therefore, that the trial court erred in admitting the exhibits. We disagree.

"In reviewing an alleged discovery violation, we must answer two questions: first, whether the State's failure to disclose the evidence [sooner] violated Rule 25.03, and second, if the State

5

violated Rule 25.03, then what [would have been] the appropriate sanction [for] the trial court [to] impose[]." *State v. Henderson*, 410 S.W.3d 760, 764 (Mo. App. E.D. 2013). We review the court's ruling on the discovery question for an abuse of discretion. *Id.* "A trial court abuses its discretion where admission of the evidence results in fundamental unfairness to the defendant." *Id.* "Fundamental unfairness occurs when the State's failure to disclose results in the defendant's 'genuine surprise,' [which thereby] prevents meaningful efforts to consider and prepare a strategy to address the evidence." *Id.* (quoting *State v. Thompson*, 985 S.W.2d 779, 785 (Mo. banc 1999)).

Rule 25.03(b)(7) requires the State, upon written request of defense counsel, to disclose any documents "the State intends to introduce into evidence at the hearing or trial." "The duty to disclose includes not only information actually known to the prosecutor[] but also information that she may learn through reasonable inquiry." *Henderson*, 410 S.W.3d at 764. And, where the information sought is in the possession or control of government personnel other than the prosecutor, the State must "use diligence and make good faith efforts to make the material or information available to defendant." Rule 25.03(h). This obligation of diligence and good faith is not limited to material in the possession of Missouri officials; it also applies to material in the possession of officials from other states. *State v. Zuroweste*, 570 S.W.3d 51, 58 (Mo. banc 2019) (citing *Merriweather v. State*, 294 S.W.3d 52, 56 (Mo. banc 2009)).[5] And, when an alleged discovery violation is brought to the court's attention, the court may either order disclosure of previously undisclosed material, grant a continuance, exclude the evidence, or enter any other order it deems just under the circumstances. Rule 25.18(a).

---

[5] Though Torres now argues that the State failed to use diligence or good faith to acquire the certified copies sooner, that is not an argument he made below. Thus, the record is sparse as to the efforts undertaken by the State to obtain the certified copies, other than the prosecutor's statement that she had "a lot of trouble getting them." But, for the reasons identified herein, the State's duty of disclosure did not arise until the State intended to use the documents at a hearing or trial, and the State disclosed the documents within days of establishing that intent.

6

Here, defense counsel filed a written request for discovery on December 20, 2018, specifically seeking documents the State *intended to introduce at a hearing or trial*. The documents at issue—State's Exhibits 100 and 101—are certified copies of Torres's prior convictions from the state of Florida. But, because the State did not charge Torres as a persistent offender until October 21, 2019, it is doubtful that the State intended to use the exhibits at a hearing or trial until then, as the exhibits would have been irrelevant and likely inadmissible for any purpose other than establishing Torres's persistent offender status. Indeed, Torres has pointed to nothing in the record evidencing an earlier intent to introduce the exhibits.[6]

"While the Rules of criminal discovery in Missouri are liberal and provide wide latitude to obtain many facts, statements, and reports prior to trial, the Rules are not absolute and do not allow or provide for every facet of what may take place in a criminal trial." *State v. Luton*, 795 S.W.2d 468, 477 (Mo. App. E.D. 1990). And both Rule 25.03(b)(7) and Torres's verbatim discovery request contain the express limitation on documents requested as those "the state intends to introduce into evidence at the hearing or trial." Where the State does not intend to introduce something at a hearing or trial, that item is not subject to disclosure under Rule 25.03(b)(7). *See State v. Kilgore*, 771 S.W.2d 57, 65-66 (Mo. banc 1989) (rejecting defendant's claimed discovery violation on the ground that the State was not required to disclose the name of a witness it did not intend to call at trial); *State v. Gilmore*, 797 S.W.2d 802, 807 (Mo. App. W.D. 1990) (same).

"Furthermore, the 'prosecution has no obligation to disclose evidence of which the defense is already aware and which the defense can acquire.'" *State v. Spencer*, 50 S.W.3d 869, 878 (Mo.

---

[6] While the State advised Torres of its intent to file an amended information alleging persistent offender status two weeks before trial, the record suggests that the State was waiting to do so until it had the exhibits to ensure the allegations were warranted. The State initially alleged four prior convictions, but there were discrepancies in two of the records received, so the State deleted the allegations related to those records and thereby negated any intent to introduce those documents at a hearing or trial. It stands to reason that, if the two remaining records had failed to reflect the convictions the State alleged, the State would not have used those records either.

App. E.D. 2001) (quoting *State v. Brooks*, 960 S.W.2d 479, 494 (Mo. banc 1997)). Here, the State's obligation to disclose did not arise until it intended to introduce the exhibits into evidence at a hearing or trial, and that time arose when the State filed the amended information containing the persistent offender allegations. Because the prosecutor represented to the court that she had disclosed the exhibits the same day she received them and one day after filing the amended information with the persistent offender allegations, and Torres does not challenge that representation, Torres has not established a discovery violation.

But, even if there were a discovery violation—a holding we do not make—the untimely disclosure of matters in discovery "does not necessarily require their exclusion from evidence." *State v. Matheson*, 919 S.W.2d 553, 559 (Mo. App. W.D. 1996). Because "[t]he purpose of discovery is to provide the defendant with an appropriate opportunity to avoid surprise and to prepare for trial in advance," *Henderson*, 410 S.W.3d at 764 (quoting *State v. Rippee*, 118 S.W.3d 682, 684 (Mo. App. S.D. 2003)), "[t]he court may permit the[] admission [of late disclosed evidence] if the defendant was already aware of the information or otherwise was not surprised by it." *Matheson*, 919 S.W.2d at 559.

Torres cannot claim surprise, as the prosecutor advised Torres at a pre-trial hearing two weeks before trial that she would probably be filing an amended information, charging him as a persistent felony offender—a fact defense counsel readily acknowledged. And "[t]he defendant is deemed aware of his own prior convictions." *Spencer*, 50 S.W.3d at 878.

Furthermore, though it was the day before trial, the State's uncontested representation is that it disclosed the certified copies to defense counsel the same day it received them from Florida, thus giving Torres time to review them to ensure accuracy before they were introduced into

8

evidence.[7] "Disclosure of evidence shortly before trial does not result in fundamental unfairness as long as the defense is given adequate opportunity to review such evidence before its introduction." *State v. Neverls*, 702 S.W.2d 901, 903 (Mo. App. E.D. 1985); *see also Zuroweste*, 570 S.W.3d at 61 ("If a criminal defendant claims a late discovery disclosure prevented her from adequately investigating and preparing for trial, the appropriate remedy is a continuance, not exclusion of the evidence, unless the complaining party establishes prejudice from the delay."). And Torres never requested a continuance, suggesting that the "roughly 18 hours' notice before the trial" that he had was sufficient time for review, despite his claims to the contrary.

Even if the notice he had were insufficient, Torres has since had abundant opportunity to review and identify any flaws in the exhibits and explain what he would have done differently if the State had disclosed the documents earlier. But Torres has not identified any potential changes he would have made in response to the exhibits, and that failure belies his claim of fundamental unfairness resulting from admission of the exhibits. *See State v. Boss*, 577 S.W.3d 509, 516 n.11 (Mo. App. W.D. 2019); *State v. Clark*, 486 S.W.3d 479, 487 (Mo. App. W.D. 2016) (both holding that, where defendants failed to identify how a late disclosure affected their trial preparation, they could not demonstrate fundamental unfairness).

In sum, Torres has failed to establish either a discovery violation or resulting fundamental unfairness from the admission of State's Exhibits 100 and 101. Therefore, Point I is denied.

## II. Convictions for both Counts II and III did not violate Torres's right to be free from double jeopardy.

In Point II, Torres argues that allowing his convictions on both Counts II and III to stand violates his right to be free from double jeopardy insofar as they constitute multiple punishments

---

[7] Indeed, this was sufficient time for the State to do the same, given the State's decision to remove two alleged priors from the amended information *after* reviewing the certified copies sent from Florida and determining they contained discrepancies.

9

for the same criminal act (possessing an unlawful item in a county jail), and the underlying statute, § 221.111, is ambiguous as to the allowable unit of prosecution. We disagree.

Torres acknowledges that he failed to raise this claim below and requests plain error review. "Under plain error review, the defendant must prove the error so substantially affected his rights that 'manifest injustice or miscarriage of justice has resulted therefrom.'" *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012) (quoting *State v. Couts*, 133 S.W.3d 52, 54 (Mo. banc 2004)).

The Double Jeopardy Clause of the Fifth Amendment bars "any person [from] be[ing] subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. And this provision is applicable to the states through the Fourteenth Amendment. *State v. Kamaka*, 277 S.W.3d 807, 810 (Mo. App. W.D. 2009). "The Double Jeopardy Clause 'contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense.'" *Id*. at 810-11 (quoting *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998)).

"[W]hen a defendant's conduct is continuous, involves more than one item or involves more than one victim, [we] focus[] on the conduct the legislature intended to proscribe under the statute." *Liberty*, 370 S.W.3d at 546. "To determine whether the legislature intended multiple punishments, a court looks first to the 'unit of prosecution' allowed by the statutes under which the defendant was charged." *Id*. at 547 (quoting *State v. Sanchez*, 186 S.W.3d 260, 267 (Mo. banc 2006)). "However, 'if the defendant has in law and in fact committed separate crimes,' multiple convictions are permissible." *Kamaka*, 277 S.W.3d at 811 (quoting *Flenoy*, 968 S.W.2d at 143). "Therefore, if each charge is founded on different conduct 'or a separate *mens rea* is newly formed,

10

the conduct gives rise to an additional crime.'" *Id*. (quoting *State v. Tyler*, 196 S.W.3d 638, 641 (Mo. App. W.D. 2006)).

Here, we need not determine the allowable unit of prosecution under § 221.111.1 because Torres, in both law and fact, committed separate crimes. Though both Counts II and III charged Torres with possession of an unlawful item in a county jail, the charges involved separate types of items possessed. Count II was based on Torres's possession of the two plastic knives, and Count III was based on his possession of the garrote (or braided cord). Both Counts identified a charged time period of August 30, 2018, through September 24, 2018. And the evidence reflected that Torres was in possession of each of the items multiple times throughout the charged period, plainly evidencing a newly formed *mens rea* each time. Thus, Torres, in both law and fact, committed separate crimes, and his prosecution for each did not violate his right to be free from double jeopardy. *See Liberty*, 370 S.W.3d at 551-52 (suggesting that convictions of different *types* of prohibited items would not violate double jeopardy).[8]

Point II is denied.

### III. Torres was not entitled to an instruction on the entrapment defense for Counts II and III.

In his final point on appeal, Torres argues that the trial court erred in refusing his instruction on the entrapment defense as to Counts II and III. Because entrapment was not an available defense to the charges in Counts II and III, we affirm the trial court's ruling.

---

[8] Though we do not reach the merits of Torres's argument regarding the use of the word "any" in § 221.111.1(4), it is worth noting that "[t]he word any is not an unyielding term, but one which readily *yields to the legislative intent as reflected by the context of the act*. And when the context so indicates, the word may be construed to mean one or more, several, some or an indefinite number." *State ex inf. Gentry v. Long-Bell Lumber Co*., 12 S.W.2d 64, 80 (Mo. banc 1928) (emphasis added) (internal quotations omitted). Thus, where legislative intent as to the meaning of the word "any" cannot be discerned—as in *Liberty*—it is ambiguous. Where, however, legislative intent as to the meaning of "any" can be discerned, that intent will prevail. *See, e.g., State v. Angle*, 146 S.W.3d 4, 12 (Mo. App. W.D. 2004) (holding that former § 195.420 (now § 579.110) prohibiting the possession of "any" listed chemical precursors for methamphetamine allowed separate charges for *each* such chemical possessed as evidenced by the statute's subsequent reference to "that chemical").

We review "a court's refusal to give a proffered instruction . . . *de novo*, meaning this [c]ourt evaluates whether the instruction was supported by the evidence and the law." *State v. Welch*, 600 S.W.3d 796, 806 (Mo. App. E.D. 2020).

Section 562.066.1 allows a defendant to raise, as a defense, that he was entrapped, meaning that

> a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he . . . was not ready and willing to engage in such conduct.

§ 562.066.2. If entrapment exists, "[t]he commission of acts which would otherwise constitute an offense is not criminal." § 562.066.1.

The entrapment defense, however, "is not available as to any crime which involves causing physical injury to or placing in danger of physical injury a person other than the person perpetrating the entrapment." § 562.066.3. The limitation on the defense "is not confined to a crime involving *conduct* causing or threatening bodily injury or an offense in which such *conduct* is an *element*." *State v. Fletcher*, 792 S.W.2d 395, 397 (Mo. App. S.D. 1990) (emphasis in original) (internal quotations omitted). "Nor is it limited to conduct causing or threatening bodily injury." *Id*. Rather, it "includes a 'crime which *involves . . . placing in danger* of physical injury a person other than the person perpetrating the entrapment." *Id*. (quoting § 562.066) (emphasis in original).

In *Fletcher*, the court examined whether the entrapment defense was available for a charge of driving while intoxicated. *Id*. at 397-98. The court looked at the history of the entrapment defense in Missouri, noting that § 562.066 was modeled after the Model Penal Code but with significant language changes. *Id*. at 397. Specifically, the Model Penal Code version precluded the defense's availability for crimes "involving conduct causing or threatening bodily injury"; whereas, § 562.066 is far broader in its limitation, precluding the defense for crimes that involve

12

"placing [persons] in danger of physical injury." *Id*. at 397-98. The court then stated, "This court would be oblivious to reality if it does not hold that driving while intoxicated on a state highway does place the public in danger of physical injury." *Id*. at 398.

Here, the plain language of § 221.111.1(4) shows that the purpose of prohibiting possession of any of the identified items is to prevent "endanger[ing] the safety or security of the institution or . . . the life or limb of any prisoner or employee thereof." Therefore, § 221.111.1(4) is plainly a "crime which involves . . . placing in danger of physical injury" any person present in the county jail or correctional center. § 562.066.3. As such, entrapment is not an available defense. Therefore, the trial court did not err in refusing Torres's proffered instruction.

Point III is denied.

**Conclusion**

The trial court did not err, plainly or otherwise. Its judgment is affirmed.

_____
Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and Alok Ahuja, Judge, concur.