

# Missouri Court of Appeals
## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37992 |
| | ) | |
| CHRISTOPHER WILLIS ENGLISH, | ) | **Filed: July 30, 2024** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

The Honorable Matthew P. Hamner, Judge

**<u>AFFIRMED</u>**

Christopher Willis English ("English") appeals the judgment of the Circuit Court of Laclede County ("trial court"), convicting him of murder in the first degree (Count 1), armed criminal action (Count 2), and abandonment of a corpse (Count 3). *See* sections 565.020, 571.015, and 194.425.[1] English contends that the trial court erred in allowing a law enforcement officer to testify as a rebuttal witness (Point I) and that the evidence was insufficient to support his convictions (Point II). Because his contentions are without merit, this Court affirms the trial court's judgment.

---

[1] All references to statutes are to RSMo 2016, including any applicable statutory changes effective January 1, 2017, unless otherwise specified.

**Factual Background and Procedural History**

On the evening of February 8, 2019, English was at a property owned by William Lucas ("Lucas") at 89 Blue Ridge Road in Kaiser, Missouri.[2] The property contained two mobile homes and an enclosed shop or garage ("garage") separate from the homes. Lucas used the garage to work on automobiles and he allowed English to use the garage to paint automobiles. Dan Cole ("Cole") and David Shoemaker ("Shoemaker") were also at the garage that evening working with Lucas on a truck.

English was not working at the garage that night, but asked Lucas if it was okay if he met someone there. Lucas agreed; English waited for the individual he was meeting in the doorway to the garage. Shoemaker heard English say something about the individual owing him $800 or the individual stealing $800 from him. Eventually, A.B. ("Victim") arrived at the garage. Victim was a drug dealer and had sold English methamphetamine previously. English and Victim went outside of the garage. Shoemaker saw English pull a gun from behind his back waistband as he exited the garage. Shortly thereafter, Lucas heard what he thought was a gunshot. English came back into the garage and said he "just killed that motherfucker." English stated he was sorry to get Lucas, Cole, and Shoemaker involved, but he needed help.

Lucas, Cole, and Shoemaker went outside the garage and saw Victim lying on his stomach with a gunshot wound to his head. Lucas retrieved a tarp to cover Victim's body. The four men put Victim in the back of Victim's vehicle, a Hyundai Santa Fe ("Santa Fe"), wrapped in the tarp. Lucas obtained bleach from his home, which he and English used to clean blood spatter off of English's truck. English got in the driver's seat of the Santa Fe and drove the vehicle down the road to the property of Steve Witt ("Witt"). Lucas followed English in another

---

[2] There was testimony that English was at the Lucas property earlier that day as well.

vehicle. Lucas told Witt they needed to hide the Santa Fe on his property and fabricated a story that the Santa Fe belonged to a woman who was hiding from an abusive boyfriend. Lucas and English returned to Lucas's property. Lucas testified he helped English because English put a gun to his head and said he would shoot Lucas's "old lady" if Lucas did not help him.

While Lucas and English moved the Santa Fe, Cole and Shoemaker went to a convenience store, Jiffy Stop, to buy cigarettes and bleach. The bleach was used to clean blood splatter off the ground and a shovel used to cover up blood on the ground.

After everyone returned to the Lucas property, English stated that "he was going to go home, clean up, get ready for work, and he would take care of the rest the next day." English had a large amount of methamphetamine he had brought in the garage earlier; English told Lucas to sell it for him and left. Lucas sold some of the methamphetamine to Cole. Cole and Shoemaker then left the property.

The following day, Victim's wife reported Victim as missing with the Columbia Police Department. She reported that she had not heard from Victim since the previous day, at which time he said he was going to the Lake Ozark area – where the Lucas property was located.

Victim's Santa Fe remained on the Witt property for approximately 30 days. English then rented a box trailer from ChaseCo. rentals in Kaiser, Missouri, to move the Santa Fe. Lucas told English he could move it to another piece of property owned by Lucas on Four Castle Road in Brumley, Missouri. Lucas testified that English went to the Witt property, loaded Victim's Santa Fe into the box trailer, and then went to the Blue Ridge Road property. Lucas also testified that English told him he had a hard time loading the Santa Fe and had to cut the bumper off the vehicle to make it fit. Lucas followed English to the Brumley property.

3

At the Brumley property, English unloaded the Santa Fe and parked it behind a trailer on the property. Lucas and English "did some methamphetamine" and then left in their separate vehicles. Lucas went to Menards and purchased a tarp and lime. He took these items back to the Santa Fe.

On March 6, 2019, Shoemaker went to the Osage Beach Police Department and told them about the events that occurred at Lucas's garage on February 8th. Lucas was arrested that same day and told the officers his version of events that occurred on February 8th. The following day, on March 7, 2019, deputies with the Miller County Sheriff's Department found the Santa Fe at Four Castle Road and discovered Victim's body inside the vehicle. An autopsy determined Victim died of a "gunshot wound of the head and neck" that passed through the spinal cord.

English was charged by an Amended Information filed November 28, 2022, and was tried by a jury from November 29 through December 2, 2022. At trial, evidence was presented as to whether the Santa Fe could physically fit inside the box trailer English rented. The Santa Fe was secured and processed at the Miller County Sheriff's Department.[3] Measurements of the box trailer were taken by the Missouri State Highway Patrol.[4] The State presented evidence that inside the trailer contained black scuff marks and black plastic shavings. Katie Corcoran worked in the crime lab of the Missouri State Highway Patrol, specializing in trace evidence, and was asked to prepare a report concerning paint and plastics evidence collected from the box trailer and the Santa Fe. Specifically, she examined "silver automotive paint, black foam, black fiberglass and another black plastic[,]" from the Santa Fe and "silver paint, black foam and black

---

[3] The sheriff's department did not have the measurements of Victim's Santa Fe nor did it know the model edition of Victim's vehicle.

[4] Specifically, by the Division of Drug and Crime Control ("DDCC").

4

fiberglass" "that was collected from inside the trailer[.]"  She compared "the three overlapping plastics and paints," and testified the plastic and paint found in the trailer were similar to and consistent with the plastic and paint of the Santa Fe.  The side mirrors on the Santa Fe were folded in and there were scuff marks on the side of the outside of the vehicle.  The bumper of the Santa Fe was not on the vehicle; instead, the bumper had been removed and was placed inside the Santa Fe.

Two witnesses testified for the defense to support English's argument that the Santa Fe could not fit into the box trailer he rented.[5]  Robert Beverly, an employee at Reliable Imports and RV, opined that the Santa Fe could not fit in the trailer and the door of the trailer close.  Mr. Beverly's opinion was based on photos of the trailer, the trailer dimensions provided by the Missouri State Highway Patrol, dimensions provided in the Hyundai 2010 product guide, and the physical dimensions of a 2012 Santa Fe on the lot at Reliable Imports and RV.  English hired Eric Prothero, a private investigator and bail bondsman, to examine and measure the box trailer.  Mr. Prothero testified he did not believe the trailer door could close with the Santa Fe inside of it.  Mr. Prothero physically measured the exact box trailer English rented using a tape measure.  Mr. Prothero stated that his opinion was based on the dimensions of the Santa Fe provided by defense counsel and by using images on Google.

In rebuttal to these two witnesses, the State presented the testimony of Sergeant James Mulkey over the defense's argument that the testimony would be "extremely prejudicial" to English.[6]  Sergeant Mulkey worked in the Major Crash Investigation Unit of the Missouri State

---

[5] English testified that he rented the trailer to move furniture.

[6] Prior to Sergeant Mulkey's testimony, the trial court stated it would allow the rebuttal testimony because the issue of the dimensions of the trailer and whether Victim's vehicle would fit in the trailer were raised by English; however, the court stated it would not permit the documents to be admitted as they were not

Highway Patrol. Sergeant Mulkey used a total station, a laser measuring instrument, to measure a 2010 Santa Fe. The sergeant used measurements of the trailer provided by the Missouri State Highway Patrol and Mr. Prothero. Sergeant Mulkey used a CAD drawing program to map out the trailer. Sergeant Mulkey testified that based on his calculations, the Santa Fe would fit in the box trailer with approximately 5" sticking out the end of the trailer.[7]

A jury found English guilty of murder in the first degree, armed criminal action, and abandonment of a corpse. English was convicted and sentenced to life imprisonment without the possibility of parole for murder in the first degree; life imprisonment for armed criminal action; and four years' imprisonment for abandonment of a corpse.

## Points on Appeal

In two points on appeal, English contends the trial court erred: (1) in allowing Sergeant James Mulkey to testify as a rebuttal witness because the State "purposefully withheld [his] investigation" from the defense until after English rested his case; and (2) in failing to grant English's motion for judgment of acquittal at the close of all evidence because there was insufficient evidence presented to prove that English "knowingly cause the death of [Victim]."

---

disclosed. The defense was given 20 to 30 minutes to interview Sergeant Mulkey before his rebuttal testimony.

[7] There was previous evidence at trial, during the testimony of Mr. Beverly, that the bumper of a Santa Fe is approximately 5.5 inches from the body to the edge of the bumper; further, Mr. Beverly estimated, after observing the photographs and what had been removed from the bumper of Victim's vehicle, that about 4 inches had been lost from the overall length of Victim's vehicle.

*Standard of Review*

Appellate review of the trial court's ruling allowing Sergeant Mulkey to testify as a rebuttal witness is reviewed for an abuse of discretion. **State v. Zuroweste**, 570 S.W.3d 51, 56 (Mo. banc 2019).

> "The trial judge determines the scope of rebuttal testimony, subject to review for abuse of discretion." *State v. Gardner*, 8 S.W.3d 66, 72 (Mo. banc 1999). "A trial court has broad discretion in determining the admissibility and scope of rebuttal evidence." *State v. Smith*, 265 S.W.3d 874, 878 (Mo. App. E.D. 2008). "This Court will not hamper the exercise of that discretion unless it is clear that the trial court's ruling is against the logic of the circumstances and is 'so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.*
> "Mere error is insufficient to support a reversal; this court will affirm the trial court's judgment unless the appellant shows that the error was so prejudicial as to deprive him of a fair trial." *State v. Martin*, 211 S.W.3d 648, 653 (Mo. App. W.D. 2007). "The test for prejudice where a criminal appellant claims improper admission of evidence 'is whether the improper admission was outcome-determinative.'" *Id.* (citing *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001)).
> "'Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence.'" *Gardner*, 8 S.W.3d at 72 (citing *State v. Peterson*, 518 S.W.2d 1, 3 (Mo. 1974)).

**State v. Campbell**, 356 S.W.3d 774, 778 (Mo. App. E.D. 2011).

Further, it is within the trial court's discretion to admit testimony as rebuttal evidence, even otherwise inadmissible evidence, to counteract any negative inference interjected into the case by the defense directly or by implication. **Id.** at 778.

*Analysis*

English claims the trial court erred in allowing Sergeant Mulkey to testify as a rebuttal witness because English disclosed his witnesses and their analyses as to whether the Victim's Santa Fe could fit inside the box trailer rented by English while the State purposefully withheld Sergeant Mulkey and his investigation, for the purpose of disproving English's witnesses, until

after English rested his case in chief. English contends the State's withholding of this information violated his rights to a fair trial.

English sought to exclude Sergeant Mulkey's testimony at trial. The trial court ruled that because English had interjected the issue as to whether Victim's Santa Fe could fit in the box trailer English rented, the issue was subject to rebuttal testimony offered by the State. The trial court allowed defense counsel to interview Sergeant Mulkey prior to him testifying, after which defense counsel again reiterated he still felt the testimony was prejudicial to English. The trial court allowed Sergeant Mulkey to testify, but did not allow the sergeant to use any report he had prepared based on the court's reading of *State v. Buchli*, 152 S.W.3d 289 (Mo. App. W.D. 2004).

In *Buchli*, the defendant asserted trial court error in allowing the rebuttal testimony of a chief criminologist from a police crime laboratory. *Id.* at 300. The defendant claimed the criminologist's testimony was improper rebuttal testimony, in part, because the witness presented scientific or expert testimony and violated discovery rules in that the State did not disclose tests performed by the expert prior to trial. *Id.* The Western District of this Court held the trial court did not abuse its discretion in allowing the criminologist to testify as a rebuttal witness; that rebuttal testimony, including expert testimony, which counteracts evidence offered by a defendant is admissible without prior disclosure and such witness is permitted to testify regarding his or her tests conducted on evidence even though any physical test results or reports are inadmissible pursuant to Rule 25.03.[8] *Id.* at 300-302.

> "'[A]ny competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence,'" *State v. Gardner*, 8 S.W.3d 66, 72 (Mo. banc 1999) (quoting *State v. Peterson*, 518 S.W.2d 1, 3 (Mo. 1974)). This would include expert

---

[8] All rule references are to Missouri Court Rules (2024).

testimony. The prosecuting attorney offered [the criminologist's] rebuttal testimony to counteract and to disprove [defendant's] testimony that blood splatter could not be found in the carpet.[] We find no abuse of discretion.

. . . .

Moreover, "'whether a witness may be a proper rebuttal witness is determined by the [circuit] court without regard to Rule 25.03.'" *State v. Moody*, 645 S.W.2d 152, 157 (Mo.App.1982) (citation omitted).

. . . .

"Rule 25.03 requires the state to disclose . . . existing written statements or memoranda but it does not require a summarization of a witness' testimony." [*State v. Enke*, 891 S.W.2d 134, 138 (Mo.App.1994)]. . . . [The criminologist] did not have "[a]ny reports or statements, . . . made in connection with the particular case, including results of . . . scientific tests, experiments, or comparisons[.]" The circuit court, therefore, did not abuse its discretion in permitting [the criminologist] to testify in rebuttal about tests he performed on the carpet.

*Id.* (footnote omitted).

Here, just like the expert witness rebuttal testimony in ***Buchli***, Sergeant Mulkey's testimony was offered to "counteract and disprove" testimony presented by English that Victim's Santa Fe could not fit into the box trailer English rented. Sergeant Mulkey's testimony is proper rebuttal testimony. The trial court properly allowed Sergeant Mulkey to testify on rebuttal, and properly refused to allow any physical report made by the sergeant into evidence; instead, only allowing the sergeant's testimony summarizing his findings. *Id.*;[9] s*ee also **State v. Slater***, 193 S.W.3d 800, 806 (Mo. App. W.D. 2006) (determining no discovery violation when trial court allowed officer to testify as a rebuttal witness regarding marks left on door at crime scene to rebut the defendant's argument that he was at burglary scene and not the driver of stolen getaway car); ***State v. Cameron***, 604 S.W.2d 653, 658 (Mo. App. E.D. 1980) (holding no abuse of

---

[9] Unlike ***Buchli***, English does not assert on appeal that the trial court's ruling violated a discovery rule. Instead, English asserts the ruling denied him a fair trial.

9

discretion in trial court allowing criminologist rebuttal testimony as to laboratory analysis of glass found on defendant's clothing).[10]

Moreover, "[a]s a general rule, rebuttal witnesses need not be disclosed." ***State v. Clark***, 975 S.W.3d 256, 263 (Mo. App. S.D. 1998). There are two exceptions to this general rule: (1) where a rebuttal witness is called to refute an alibi, and (2) where a rebuttal witness is called to rebut a defense of not guilty by reason of mental disease or defect excluding responsibility and the defense discloses the witnesses he or she intends to call to support its defense. ***Id.*** "Where a rebuttal witness is called to rebut a defense other than alibi or mental disease or defect, there is no obligation to disclose the witness." ***Id.***; ***State v. Menteer***, 845 S.W.2d 581, 586 (Mo. App. E.D. 1992) ("Generally, there is no obligation to disclose rebuttal witnesses, unless they are called to rebut an alibi."). Sergeant Mulkey's testimony was not offered to rebut a defense of alibi or mental disease or defect, therefore it was proper rebuttal evidence. Point I is denied.

---

[10] Even assuming the State violated criminal discovery rules by failing to disclose Sergeant Mulkey's testimony prior to trial, the trial court allowed English time to interview the sergeant prior to his testimony, thereby curing any violation. ***State v. Cook***, 5 S.W.3d 572, 575 (Mo. App. W.D. 1999).

> While compliance with these discovery rules is mandatory, violations are not reversible error unless they result in fundamental unfairness or prejudice to a defendant's substantial rights. *State v. Smothers*, 605 S.W.2d 128, 131 (Mo. banc 1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 203 (1981). The circuit court has much latitude in determining what the remedy for a violation should be, *State v. Kilgore*, 771 S.W.2d 57, 66 (Mo. banc), *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989), but it is obligated to tailor a fundamentally fair remedy. Rule 25.16 permits the circuit court to admit the evidence if the defendant has an adequate opportunity to prepare to meet the evidence. *State v. Matheson*, 919 S.W.2d 553, 559-60 (Mo.App.1996).

***Id.*** at 575. Defense counsel cross-examined the witness as to his lack of knowledge regarding Victim's Santa Fe, the depth of a Santa Fe bumper, and how much space removal of the bumper would create. English presented extensive evidence that the Santa Fe could not fit inside the trailer through the testimony of Robert Beverly and Eric Prothero.

*Standard of Review*

In examining the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found a defendant guilty beyond a reasonable doubt. ***State v. Stover***, 388 S.W.3d 138, 146 (Mo. banc 2012). In its review, the appellate court accepts as true all evidence favorable to the verdict, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences contrary to the verdict. ***Id.*** An appellant challenging the sufficiency of the evidence must "demonstrate that no combination of all, part, or none of the evidence, and all, part, or none of the available inferences therefrom, would have been sufficient to support" the verdict. ***State v. Hooper***, 552 S.W.3d 123, 134 (Mo. App. S.D. 2018) (internal quotations and citation omitted)).

*Analysis*

In Point II, English contends the trial court erred in failing to grant his motion for judgment of acquittal at the close of all evidence and his motion for a new trial because there was insufficient evidence to prove that he knowingly caused the death of Victim; he claims "no reasonable juror could find from the evidence presented that [he] caused the death of [Victim] based upon the contradictory evidence provided by witnesses Lucas and Shoemaker and the weight of the evidence does not support the verdict." The argument portion of Point II of English's appellate brief, in its entirety, relies on the doctrine of destructive contradictions.[11]

---

[11] The doctrine of destructive contradictions "provides that a *witness's testimony* loses probative value when his or her statements *at trial* are so inconsistent, contradictory, and diametrically opposed to one another that they rob the testimony of all probative" value precluding reliance thereon. ***State v.***

English argues that "analysis of the testimony of Lucas, Shoemaker and the Stipulations of Cole and Witt are so inconsistent, contradictory and diametrically opposed with each other that the testimony is robbed of probative force."

The inconsistencies and contradictions outlined by English in his brief include testimony that Lucas heard a gunshot and Shoemaker did not; whether Victim came into the garage before English went outside the garage; English's demeanor after re-entering the garage; whether Lucas, Shoemaker, and Cole, or just Lucas, initially went outside to help English; Lucas and Shoemaker's descriptions of Victim's face; who cleaned English's truck with bleach; and whether English gave the methamphetamine to Lucas, Shoemaker, and Cole or asked Lucas to sell the methamphetamine. English asserts these inconsistencies and contradictions are "intensified" by the testimony of Witt that the individual with Lucas did not have facial hair and English had a beard on the date of the offense and Shoemaker's disclosure at trial, for the first time, that "some kid" was in the Lucas trailer.

The doctrine of destructive contradictions has been abolished by Missouri caselaw. ***State v. Porter***, 439 S.W.3d 208, 213 (Mo. banc 2014). The doctrine was abolished on the basis that it required "appellate courts to engage in credibility determinations that are properly left to judges and juries sitting as triers of fact." ***Id.*** at 213; s*ee also* ***State v. Pilant***, 437 S.W.3d 838, 839 (Mo. App. S.D. 2014) (recognizing the Supreme Court of Missouri abolished the doctrine of destructive contradictions in ***Porter***, because, among other reasons, it requires an appellate court "to act as the finder of fact"; the holding in ***Porter*** precludes this Court's consideration of the doctrine and, therefore, limits its review of the appellant's point on appeal based on the doctrine

---

***Uptegrove***, 330 S.W.3d 586, 590 (Mo. App. W.D. 2011) (internal quotations and citation omitted), *abrogated by* ***State v. Porter***, 439 S.W.3d 208, 213 (Mo. banc 2014).

12

of destructive contradictions to the general standard of review for sufficiency of the evidence claims). Like this Court in *Porter* and *Pilant*, this Court limits its review of Point II to "the sufficiency of the evidence under our general standard of review for such challenges." *Pilant*, 437 S.W.3d at 839.

The testimony of a single witness is sufficient to support a conviction even if such testimony is inherently inconsistent or inconsistent with the testimony of other witnesses. *State v. Hansen*, 660 S.W.3d 45, 49 n.2 (Mo. App. S.D. 2023); *State v. Dodd*, 637 S.W.3d 659, 668 (Mo. App. W.D. 2021); *State v. Taylor*, 504 S.W.3d 116, 121 (Mo. App. E.D. 2016). It is for the fact finder to resolve conflicting evidence and determine the credibility and weight of testimony; that determination is not for the appellate court. *Taylor*, 504 S.W.3d at 121-22.

"A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1. There was evidence before the jury that English arranged to meet with Victim; English was upset with Victim for taking about $800 from him; English displayed a gun upon Victim's arrival; a gunshot was heard coming from outside where English and Victim were alone together; English came back into the garage and stated he "shot the motherfucker"; and Victim was shot in the head. There was also testimony that English went to great lengths to conceal Victim's body: English placed Victim inside Victim's Santa Fe and then removed the Santa Fe from the location where he was shot to another individual's property telling the property owner that the vehicle must remain hidden to protect a woman from her abusive boyfriend, rented a trailer, removed the bumper from Victim's Santa Fe in order for the vehicle to fit inside the trailer, placed the Santa Fe inside the trailer, and then moved the trailer with Victim's body inside the Santa Fe to a

13

second location.[12]  The fact that any evidence may have been inconsistent or contradicted by other testimony is of no consequence.  The jury, as fact finder, is free to believe all, part or none of the testimony before it.  *Taylor*, 504 S.W.3d at 122.  Point II is denied.

## Conclusion

This Court determines the trial court did not abuse its discretion in allowing Sergeant Mulkey to testify as a rebuttal witness at trial and further concludes there was sufficient evidence to support English's conviction for murder in the first degree.  The trial court's judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

---

[12] In determining whether there is sufficient evidence that a defendant caused the death of another person for purposes of section 565.020.1, the jury may rely on inferences from a defendant's conduct before, during, and after the act to support its verdict.  *Hooper*, 552 S.W.3d at 137.  Attempts to dispose of evidence or conceal the crime is also evidence of the elements required to support a violation of section 565.020.1.  *State v. Wood*, 580 S.W.3d 566, 575 (Mo. banc 2019); *State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002).